OF THE

## STATE OF NEVADA,

## JULY TERM, 1883.

[No. 1139.]

## JOHN KELLY, RESPONDENT, *v.* KATE KELLY, APPELLANT.

DIVORCE—EXTREME CRUELTY.—The element of danger to life, limb or health, or the reasonable apprehension of such danger, must exist in order to constitute legal cruelty. There may, however, be cruelty without personal violence, and such cruelty, working upon the mind, may affect the health.

IDEM—CRUELTY OF WIFE.—False accusations, by the wife, of marital infidelity on the part of the husband, may in certain cases constitute such extreme cruelty as to entitle the husband to a divorce. The statute contemplates cases in which the husband may be the complaining party, and in such cases it affords him the same relief which it extends to a complaining wife.

APPEAL FROM JUDGMENT—PRESUMPTIONS.—When matter is necessary to be proven in order to support the judgment it will be presumed to have been proven, in the absence of an affirmative showing to the contrary. This principle is always applied where the appeal is taken from the judgment roll alone.

VERIFICATION OF COMPLAINT—SUFFICIENCY OF.—When the allegations of the complaint are made positively, and no averments stated upon information or belief, a verification, which omits the words "except as to those matters which are therein stated on his information or belief, and, as to those matters, he believes it to be true," but otherwise follows the form prescribed by statute, is sufficient.

VOL. XVIII—7

APPEAL from the District Court of the First Judicial District, Storey County.

The complaint is sufficiently set forth in the opinion. The answer, omitting the title of court, is in the following words: "Now comes the defendant in the above entitled cause; and for answer unto the complaint of plaintiff, filed herein, admits the truth of each and every allegation therein contained, and prays the sum of twenty thousand dollars be awarded to her out of the community property."

*Crittenden Thornton* and *F. H. Merzbach,* for Appellant:

I. The averments of the charges of adultery made by the defendant against the plaintiff are insufficient in substance.

(1.) The offense consists in words, a spoken, not an acted, crime. Following the analogy of the precedents of pleading in slander, the words should be set forth *in ipsissimis verbis.* (Towns. on Slan. and Lib. sec. 329.)

The only existing exception to this rule is where the words uttered are so obscene as to render it improper that they should appear upon the record, and in such cases the statement of the words may be omitted altogether, and a description substituted; but the reason for not setting forth the exact words must appear by proper averments on the face of the complaint. (Id. sec. 332.)

(2.) The charge of adultery alleged to have been made by the defendant against the plaintiff is not alleged to have been made in the presence or hearing of any third person.

In an action for slander, the allegation that the defendant spoke the words in the presence or hearing of divers persons is indispensable. (Style, 70; Stark. on Slan. 360; *Edwards* v. *Wooton,* 12 Co. 35; *Hicks' Case,* Pop. 139, and Hob. 215; *Wheeler & Appleton's Case,* Godb. 340; *Phillips* v. *Jansen,* 2 Esp. R. 624; *Lyle* v. *Clason,* 1 Caines, 581; *Sheffill* v. *Van Deusen,* 13 Gray, 304.)

(3.) The charges of adultery made by the defendant against the plaintiff in the hearing of third persons are not alleged to be false.

That falsehood is of the gist and essence of the plaintiff's cause of action, not only in a technical action of slander, but in a suit for divorce on the same grounds, is a point on which all the authorities are so unanimous, that it would be a waste of time and space to cite them.

II. A charge of adultery, brought by either spouse against the other, even if false, is not extreme cruelty *per se,* but depends upon matters of aggravation and surrounding circumstances, its results and consequences, and the character of the parties, in the following particulars :

(1.) Publicity ; the presence of the parents, children, friends, or servants. (*Powelson* v. *Powelson,* 22 Cal. 358 ; *Cook* v. *Cook,* 3 Stockt. (N. J. Ch.) 195 ; *Wheeler* v. *Wheeler,* 53 Iowa, 511 ; *Farnham* v. *Farnham,* 73 Ill. 497 ; *Goodman* v. *Goodman,* 26 Mich 417.)

Of all the surrounding circumstances which might or could characterize this offense against marital peace and happiness, publicity is the most essential. If the reproach be not uttered in the hearing of a third person, the law itself dooms it to perpetual oblivion. The charge may rankle and wound, but it cannot disgrace. A charge of this kind, uttered in the privacy of the home, far from the hearing of the outer world, would, by the law, be held to be unspoken.

(2.) Falsehood.

This is essential. The truth would certainly be a justification in this if in any cause.

(3.) The lack of existence of probable cause, or of well-founded suspicion.

In addition to the abstract falsehood of a single charge of unchastity, bad faith, and lack of reasonable or probable ground of belief in its truth, should appear. (*Kennedy* v. *Kennedy,* 73 N. Y. 374 ; *Lewis* v. *Lewis,* 5 Mo. 278.)

(4.) Habitual repetition. (*Powelson* v. *Powelson,* 22 Cal. 358 ; *Bennett* v. *Bennett,* 24 Mich. 483 ; *Goodman* v. *Goodman,* 26 Mich. 417 ; *Hoshall* v. *Hoshall,* 51 Md. 72 ; *Cook* v. *Cook,* 3 Stockt. (N. J. Ch.) 195 ; *Wheeler* v. *Wheeler,* 53 Iowa, 511 ; *Farnham* v. *Farnham,* 73 Ill. 497.)

(5.) Physical results and consequences to the sufferer. (*Powelson* v. *Powelson*, 22 Cal. 358 ; *Richards* v. *Richards*, 1 Wright (Pa.) 228.)

The use of the words " unendurable" and " miserable" in the description of the results of the defendant's acts does not strengthen the pleading. The causes alleged must be adequate, in the legal sense, to produce such effects. This court cannot know, judicially, the mental fiber or the tenderness of the emotions of John Kelly. He may, like the fabled Sybarite, "die of a roseleaf in aromatic pain ;" but there is nothing on the face of his complaint to show that his sense of virtue is so exquisite, or his repugnance to a family quarrel so great, that an imputation upon his reputation for chastity will bring in its train such anguish that his physical and mental constitution is in danger of giving away under the shock. For all that this court can know, the plaintiff may be equal to Socrates enduring the taunts of Xantippe, and giving to the world a never-to-be-forgotten example of marital forbearance and manly fortitude. (See further, as to the necessities of a physical result, *Bailey* v. *Bailey*, 97 Mass. 373 ; *Otway* v. *Otway*, 2 Phill. 95 ; *Smith* v. *Smith*, Ib. 207 ; *Tomkins* v. *Tomkins*, 1 Swab. & Trist. 168 ; *Milford* v. *Milford*, 1 L. R. P. & D. 295.)

III. Charges of adultery brought by the wife against the husband cannot be extreme cruelty, except in extreme cases. The case must be extreme in every feature, because of

(1.) The duty and responsibility of the husband as a member of the stronger sex. (*Birkby* v. *Birkby*, 15 Ill. 120 ; *De la Hay* v. *De la Hay*, 21 Ill. 252 ; *Sheffield* v. *Sheffield*, 3 Tex. 87 ; *Bennett* v. *Bennett*, 24 Mich. 483.)

Where the plaintiff relies upon an exception to the general and ordinary course of human events, he should be required to state it.

(2.) The undeniable fact that the proven adultery of the husband does not expose him to the same consequences or punishments, moral, social, or physical.

Nothing which we could say beyond its mere utterance could possibly add to the knowledge which every man

possesses of truth of the fact we have just stated.   It is as well known as the difference between the sexes ; as the reverence of civilized beings for female virtue ; as their contempt for those who do not possess it.   Until very recently, in the continuous growth of the science of jurisprudence, divorces were not granted for adultery of the husband.   Such adultery does not bring the same consequences to the family, in fact or in law.   It does not impose upon the husband or the family an heir by a stranger.   The purity of blood is not corrupted.   The greatest and most profound writers on the philosophy of jurisprudence have given their opinions against granting divorces for the adultery of a husband.   (Shelford on Marriage and Divorce, 395; Montesquieu, Esprit des Lois, tome 3, p. 136 ; Traité du Contrat de Mariage, Pothier, 516 ; Hosack, Conflict of Laws, 255, and note ; Taylor's Elements of Civil Law, 254; Cooper's Justinian, lib. 1, tit. 9, sec. 1, p. 435.)

IV.  The necessary results and consequences of the charge of adultery, either moral, social or physical, are not alleged to have followed in this case.

V.  The verification of the complaint is insufficient.   (1 Comp. Laws, sec. 215 ; 1 Comp. Laws, 1118, Waits Pr. 340; *Truscott* v. *Doll*, 7 How. Pr. 221.)

*Woodburn & Mitchell*, for Respondent:

1.  The validity of this complaint cannot be tested by the application of the exploded doctrine, that there can be no legal cruelty without actual or threatened bodily harm, but must be tested by the modern rule which has reversed that of the English ecclesiastical courts, and which best accords with the refinement and intelligence of this enlightened age.   (*Reed* v. *Reed*, 4 Nev. 395 ; *Lewis* v. *Lewis*, 5 Mo. 278 ; *Pinkard* v. *Pinkard*, 14 Tex. 356 ; *Elmes* v. *Elmes*, 9 Barr. (Penn.) 166.)   It is claimed that the language of the several charges in the complaint is not set forth ; that the reason for not setting forth the exact words must appear, and that some of the charges are not alleged to be false.   If there were an omission, which we deny, to

fully state the facts constituting the legal cruelty, it could be taken advantage of, only on demurrer. (*Hill* v. *Hill*, 10 Ala. 527.) The bill of complaint need not, allege with circumstantial particularity, every act of cruelty complained of ; one or two specifications will be sufficient, and others may be proved under the general charge. (*Reese* v. *Reese*, 23 Ala. 785 ; *Kenemer* v. *Kenemer*, 26 Ind. 330.)

II. The allegations of the complaint being positive, and not made upon information or belief, the verification was in strict conformity with the requirements of the statute. The appellant filed her answer, went to trial on the merits without objecting to the verification, and cannot for the first time raise the point in the appellate court. (*McCullough* v. *Clark*, 41 Cal. 298 ; *Kuhland* v. *Sedgwick*, 17 Cal 127.)

III. The laws of this state give the husband, as well as the wife, the right to bring a suit for divorce on the ground of extreme cruelty. (1 Bishop on Marriage and Divorce, 762.) Defendant stands in no better light than does the plaintiff. The judgment roll shows that she confessed all the allegations of the complaint, and that she was awarded on the hearing, and is now enjoying, more of the common property than she prayed for in her answer. She permitted nearly a year to roll by before appealing to this court, and then suddenly became dissatisfied with the decree, and now seeks to set it aside on grounds which should have been urged in the court below.

In addition to the authorities cited by counsel, the court examined the following : *Davies* v. *Davies*, 55 Barb. 136 ; *Van Veghten* v. *Van Veghten*, 4 John. Ch. 502 ; *Evans* v. *Evans*, 1 Hag. Con. 35 ; *Oliver* v. *Oliver*, Id. 361 ; *Kirkman* v. *Kirkman*, Id. 413 ; *Holden* v. *Holden*, Id. 459 ; Browning on M. and D. 111; *Hooper* v. *Hooper*, 19 Mo. 356 ; *Jones* v. *Jones*, 66 Penn. 497; *White* v. *White*, 1 S. & T. 593; *Gibbs* v. *Gibbs*, 18 Kan. 423 ; *Lynch* v. *Lynch*, 33 Md. 329 ; *May* v. *May*, 62 Penn. 211 ; *Close* v. *Close*, 25 N. J. Eq. 529 ; *Latham* v. *Latham*, 30 Gratt. 307; *Devoe* v. *Devoe*, 51 Cal. 544; *Briggs* v. *Briggs*, 20 Mich. 45 ; *Waring* v. *Waring*, 2 Phillmore, 141 ; *McNamara* v. *McNamara*, 2

Hilton, 549; *Graecen* v. *Graecen*, 2 N. J. Ch. 462; *Pidge* v. *Pidge*, 3 Met. 266; *Kempf* v. *Kempf*, 34 Mo. 211; *Walton* v. *Walton*, 32 Barb. 204; *Henderson* v. *Henderson*, 88 Ill. 250.

By the Court, BELKNAP, J.:

This is an appeal from a judgment of divorce in favor of the husband and against the wife upon the ground of extreme cruelty. Neither the findings of the court nor any statement of the evidence has been brought here. The appeal is taken from the judgment roll alone, and the principal question presented for consideration is whether the allegations of the complaint are sufficient to support a judgment of divorce.

The complaint, after setting forth the necessary jurisdictional facts, proceeds as follows: "That since the said marriage defendant has been guilty of extreme cruelty towards this plaintiff; that on the sixth day of July, A. D. 1881, at the city of San Francisco, defendant falsely charged plaintiff with committing adultery, and frequently since said date has accused him of conjugal infidelity, and with living and cohabiting with other women, and has since then constantly circulated among their mutual friends charges of the same character. Plaintiff further avers that since the said sixth day of July, A. D. 1881, defendant has been in the habit of villifying, slandering and abusing this plaintiff, and applying to him the most opprobrious epithets, and has frequently threatened to abandon plaintiff; that by reason of the acts of the defendant hereinbefore set forth the life of the plaintiff has been rendered unendurable and miserable, so that he has been forced to cease cohabiting and living with defendant."

In considering extreme cruelty as a ground of divorce, courts have cautiously given it negative, rather than affirmative, definitions. The difficulty in giving an affirmative definition arises from the fact that cruelty is a relative term; its existence frequently depends upon the character and refinement of the parties, and the conclusion to be reached

in each case must depend upon its own particular facts. "We do not divorce savages and barbarians because they are such to each other," said the supreme court of Pennsylvania, in *Richards* v. *Richards.* "We can exercise no sound judgment in such cases (divorce cases) without studying the acts complained of in connection with the character of the parties, and for this we want the common sense of the jury rather than fixed legal rules." (37 Penn. 228.)

In the great case of *Evans* v. *Evans*, 1 Hagg. Cons. 35, Lord Stowell laid down certain principles which have been universally approved. He said: "What is cruelty? In the present case it is hardly necessary for me to define it, because the facts here complained of are such as fall within the most restricted definition of cruelty; they affect not only the comfort, but they affect the health and even the life of the party. * * * What merely wounds the mental feelings is in few cases to be admitted, when not accompanied with bodily injury, either actual or menaced. Mere austerity of temper, petulance of manner, rudeness of language, a want of civil attention and accommodation, even occasional sallies of passion, if they do not threaten bodily harm, do not amount to legal cruelty; they are high moral offenses in the marriage state, undoubtedly, not innocent surely in any state of life, but still they are not that cruelty against which the law can relieve. * * * In the older cases of this sort, which I have had an opportunity of looking into, I have observed that the danger of life, limb, or health is usually inserted as the ground upon which the court has proceeded to a separation. This doctrine has been repeatedly applied by the court in the cases that have been cited. The court has never been driven off this ground. It has been always jealous of the inconvenience of departing from it, and I have heard no case cited in which the court has granted a divorce without proof given of a reasonable apprehension of bodily hurt. I say an apprehension, because assuredly the court is not to wait until the hurt is actually done; but the apprehension must be reasonable; it must not be an apprehension arising merely

from an exquisite and diseased sensibility of the mind.''

Adopting the principle that the element of danger to life, limb, or health, or the reasonable apprehension of such danger, must exist in order to constitute legal cruelty, can it be affirmed as matter of law that the plaintiff may not have established a cause of action under the complaint? If the conduct of which the defendant confesses to have been guilty, and which she admits drove the plaintiff from his home, could have resulted in injury to health, then the judgment must be allowed to stand.  The result which the law is intended to prevent may be accomplished without any physical violence.  The health of a sensitive wife may be as effectually destroyed by systematic abuse, and humiliating insults and annoyances, as by blows and batteries. It would be a reproach to the law, as is said by Mr. Bishop in his work on Marriage and Divorce, to say that a husband may not by personal violence ruin the health of his wife or kill her, and yet allow him to produce the same result in some other way.  (Section 733.)

Upon this subject the Pennsylvania court of common pleas employed the following language :   "A husband may, by a course of humiliating insults and annoyances, practiced in the various forms which ingenious malice could readily devise, eventually destroy the life or health of his wife, although such conduct may be unaccompanied by violence, positive or threatened.   Would the wife have no remedy in such circumstances, under our divorce laws, because actual or threatened personal violence formed no element in such cruelty ?   The answer to this question seems free from difficulty when the subject is considered with reference to the principles on which the divorce for cruelty is predicated. The courts intervene to dissolve the marriage bond under this head, for the conservation of the life or health of the wife, endangered by the treatment of the husband.   The cruelty is judged from its effects ; not solely from the means by which those effects are produced.   To hold absolutely that, if a husband avoids positive or threatened personal violence, the wife has no legal protection against any

means short of these which he may resort to, and which may destroy her life or health, is to invite such a system of infliction by the indemnity given to the wrong-doer. The more rational application of the doctrine of cruelty is to consider a course of marital unkindness with reference to the effect it must necessarily produce on the life or health of the wife ; and if it has been such as to affect or injure either, to regard it as true legal cruelty. This doctrine seems to have been the view of Sir H. Jenner Fust, in *Dysart* v. *Dysart,* where he deduces from what Sir William Scott ruled in *Evans* v. *Evans,* that if austerity of temper, petulance of manner, rudeness of language, a want of civil attention, occasional sallies of passion, *do threaten bodily harm, they do amount to legal cruelty.* This idea, expressed axiomatically, would be no less than the assertion of this principle : that, whatever form marital ill-treatment assumes, if a continuity of it involves the life or health of the wife, it is legal cruelty." (*Butler* v. *Butler,* 1 Pars. (Pa.) Sel. Cas. 344.)

We scarcely need the aid of judicial authority for the enforcement of the truth that there may be cruelty without personal violence, and that such cruelty, working upon the mind, may affect the health. Wretchedness of mind can hardly fail to have this result. In causes of divorce upon the ground of cruelty, wives appear as complainants more frequently than husbands. This arises from the fact that the husband is generally physically stronger than the wife, and less susceptible to the effects of ill-treatment than she. He too may, in fact, frequently restrain the wife's violence, by the exercise of marital power in the domestic forum, without the aid of courts. But the law does not encourage him to measure strength with her. "The fact that the husband can defend himself is the very grievance. It is because he may be tempted, in defending himself, to retaliate upon his wife that the court is bound to interfere, and to decree a judicial separation when such acts are proved. When a man marries an ill-tempered woman he must put up with her ill-humor ; but the moment she lifts

her hand against him the court must interfere, for, if it does not, how can it answer the husband if he should subsequently allege that he had been forced to use violence in self-defense." (*Forth* v. *Forth*, 36 Law J. 122, cited in Browning on M. and D. 111.)

The statute contemplates cases in which the husband may be the complaining party, and in such cases expressly affords him the same relief which it extends to a complaining wife. Although he is generally physically stronger than she, he may be the weaker party. And cases may arise in which the wife may cause the husband to suffer as seriously, mentally and physically, as she would were he the aggressor. To reverse this judgment would be to say, as matter of law, that no such cases could exist. Under the allegations of the complaint a case of extreme cruelty could have been proven. Whether such a case was, in fact, proven, cannot be reviewed upon this appeal, because of appellant's failure to make the evidence a part of the record. The general principle of law is that when matter is necessary to be proven in order to support the judgment, it will be presumed to have been proven, in the absence of an affirmative showing to the contrary. And this principle is always applicable in an appellate court to causes presented, as this case has been, upon the judgment roll alone.

Objection is made to the verification of the complaint. Each allegation of the complaint is made positively, and nothing is stated upon information or belief. The verification follows the form prescribed by statute, omitting the words "except as to those matters which are therein stated on his information or belief, and, as to those matters, he believes it to be true." "If a party, who in his answer has stated nothing on information and belief, thinks it advisable to swear that he believes such statement to be true, he doubtless has a right to do so; but if in such a case he confines himself to swearing that his answer is *true to his knowledge*, he not only complies with the requirements of the Code, but avoids what, to say the least of it, is a harmless absurdity." (*Kinkaid* v. *Kipp*, 1 Duer, 692.)

Judgment affirmed.