SYLVIS v. SYLVIS.

1. Where a defendant neglects to have a general statement in a complaint made more specific, this court cannot on appeal say that such statement is insufficient to permit the giving of evidence in support of it, and if evidence is received without objection, showing acts which tended to prove the statement, it cannot be said the proof does not correspond to the allegation.

2. A construction will not be put upon a pleading that will render it meaningless if a construction can be given which makes the allegation consistent with the object sought by the pleading, and also harmonizes with other allegations in the pleading.

3. Acts which tend to destroy the peace of mind are well calculated to impair health and endanger life.

4. There is no inflexible rule in this state which precludes the granting of a divorce upon the uncorroborated testimony of the plaintiff in the suit.

5. Where the report of a referee presents some statements of fact sworn to, and conclusions which may be the conclusions of the witness or of the referee, and no objection is made by either party to the method of reporting the testimony, the conclusions stated should be deemed as having been properly drawn from the facts sworn to.

6. To authorize a divorce on the ground of cruelty the evidence should show that the acts complained of are such as that danger to life, limb or health will naturally arise from the continued commission of such acts; it is not necessary to show that actual physical violence has been used.

7. The general denial puts in issue all the material averments of the complaint, and permits the defendant to prove any and all facts which tend to negative those averments, or some one or more of them.

8. New matter must, in effect, confess and avoid. A statement of facts by way of defense being merely inconsistent with those stated by the plaintiff, is, in effect, a denial. A replication is necessary only when new matter is set up by way of defense.

9. The general rule is that where a party intends to avail himself of an adjudication upon the subject-matter, and not merely to prove collaterally that the decree was made, he must show the proceedings upon which the decree was founded.

*Error to Superior Court of Denver.*

THIS is an action brought by Pauling B. Sylvis against his wife, Frances J. Sylvis, for a divorce on the ground

of extreme cruelty. The allegations of the complaint, charging such cruelty, are contained in the fourth and fifth paragraphs, which paragraphs are as follows: "*Fourth.* That, during the time he lived with his wife, he treated her with uniform kindness, and supplied her with all the necessaries of life, as became persons in their station in life; but that the defendant, disregarding her duty as a wife, for the period of more than five years prior to their separation was guilty of numberless acts of extreme cruelty to plaintiff, whereby his life was rendered burdensome to him, and his personal safety endangered; that, for the period last aforesaid, she was constantly subject to uncontrollable paroxysms of rage and violence, and that, during these attacks, defendant would abuse plaintiff in the most vile and opprobrious manner, accusing him of vile and illegal acts, of which he was wholly innocent, and which were wholly without foundation, and would rage about the house, uttering these vile accusations, too vile to be set forth herein, and threaten the personal security of plaintiff; that, after retiring for the night, she would suddenly, in these paroxysms, spring from her bed, lay hold of it, and attempt to drag it about the room,— all the time raging against plaintiff in loud tones, and threatening his safety; that this conduct of defendant continued year after year, and for years before said separation was a daily occurrence when plaintiff was at home, until finally plaintiff, fearing for his life, was forced to leave her, which he did for these causes and no other; that, when he so left, he was the owner of property of the value of about $1,200, every cent of which he gave her for her support. *Fifth.* And plaintiff further avers that the longer continuance of the cohabitation between plaintiff and defendant, for the causes aforesaid, would, as he believes, [have] been attended with bodily harm to the plaintiff."

That portion of defendant's answer answering the foregoing allegations of the complaint is as follows: "De-

fendant denies that during the time he, the plaintiff, lived with defendant, his wife, he treated defendant with uniform kindness; and denied that he supplied her with all the necessaries of life, as became persons in their station in life; and denies that she, disregarding her duties as a wife, for the period of more than five years prior to their separation, was guilty of numberless acts of extreme cruelty to plaintiff, whereby his life was rendered burdensome to him, and his personal safety endangered; and denies that, for the period mentioned in said complaint, the defendant was continually subject to uncontrollable paroxysms of rage and violence; and denies that she ever had such attacks; and denies that she abused plaintiff in the most vile and opprobrious manner; and denies that she accused him of vile and illegal acts of which he was wholly innocent or guilty; and denies that she would or did rage about the house uttering vile accusations — too vile to be set forth in plaintiff's complaint; and denies that she threatened the personal security of plaintiff; and denies that, after retiring for the night, she would suddenly, in paroxysms, spring from her bed, lay hold of it, and attempt to drag it about the room; and denies that she raged against plaintiff in loud tones, and threatened his safety; and denies that any such conduct of defendant continued year after year, and for years before said separation was a daily occurrence; and denies that plaintiff, fearing for his life, was forced to leave this defendant for the pretended causes set out in his said complaint, or for any other cause; and denies that, when he so left her, he was the owner of property of the value of about $1,200, every cent of which he gave to this defendant for her support; and defendant denies that the longer continuance of the cohabitation between this defendant and plaintiff, for the pretended causes set forth in his said complaint, or for any other cause, would be attended with bodily harm to the plaintiff." For a second defense and cross-complaint, the defendant, in a separate

paragraph of her answer, alleged that on the 5th day of January, 1878, the plaintiff, disregarding his marital duties towards the defendant, wilfully and without any cause deserted and abandoned the defendant, and has ever since wilfully remained absent from her. For a third defense and cross-complaint, the defendant, in a separate paragraph of her answer, alleged that on the 16th day of October, 1883, in an action then pending in the court of common pleas of the state of Ohio within and for the county of Montgomery, in which the defendant herein was plaintiff, and the plaintiff herein was defendant, the defendant herein obtained a decree of said court awarding the custody of their child, Howard Paulding Sylvis, to the plaintiff, and ordering the defendant in said suit to pay for the support of said Howard Paulding Sylvis the sum of $10 per month until the further order of the court, and that said decree still remained in full force and effect. The defendant prayed that a divorce be denied to the plaintiff; that plaintiff be ordered to pay her the sum of $150, due on the decree of said court of common pleas; and for such other alimony and relief as equity may require.

The code of Colorado, section 65, provides that plaintiff shall reply to an answer or cross-complaint containing new matter. Judgment dismissing the plaintiff's bill.

Messrs. BROWNE and PUTNAM and E. O. WOLCOTT, for plaintiff in error.

Messrs. ROGERS and McCORD, for defendant in error.

RISING, C. Appellant seeks a reversal of the judgment on the ground that the evidence in the case is sufficient to entitle him to a decree of divorce. Appellee resists the reversal of the judgment upon the following grounds: *First*, that the proof made by the plaintiff does not correspond with the allegations of his complaint, and therefore he is not entitled to a decree as prayed;

*second*, that a divorce should not be granted on the uncorroborated testimony of the plaintiff; *third*, that it is shown by the admissions of the plaintiff that he is not entitled to a divorce. The proper consideration of the contention by appellant and by appellee requires an examination of the pleadings before we consider the evidence.

1. The plaintiff charges that the defendant was, for a period of more than five years prior to his separation from her, guilty of numberless acts of extreme cruelty, which rendered life a burden to him and endangered his personal safety. This statement is very general, and, had objection been made thereto on that ground, the plaintiff could have been required to make the statement more definite and certain; but, if the defendant did not care to have such general statement made definite and certain, we cannot, upon appeal, say that such statement is insufficient to permit the giving of any testimony in support of it; and certainly, if evidence is received without objection showing acts which tended to render life a burden to the plaintiff, and thereby endanger his health, we cannot say that such proof does not correspond to the allegations of the complaint. *Berdell v. Bissell*, 6 Colo. 162–164.

2. The plaintiff further charges that, during the five years preceding his separation from her, defendant was constantly subject to uncontrollable paroxysms of rage and violence; and that, during such paroxysms, she abused the plaintiff in the most vile and opprobrious manner, and accused him of vile and illegal acts of which he was innocent, and would rage about the house uttering such vile accusations, which were too vile to be set forth by plaintiff in his complaint. It has been suggested of this allegation, that, if the paroxysms of rage and violence were uncontrollable, then defendant was not accountable therefor, and hence nothing done by her at such times could afford any grounds for divorce for

cruelty. We do not so construe this allegation. To so construe it would be to make it meaningless, and this should not be done if it can be given a construction which makes the allegation consistent with the object sought by the pleading, and also harmonious with the other allegations of the complaint; and this can be done by construing the allegation to mean that such paroxysms of rage and violence were beyond the control of the plaintiff, and that the pleader so intended to charge we have no doubt. We think the allegations last set forth charge specific acts of cruelty, and that the failure to give the language used does not render the charge so indefinite that evidence should not be received to support it. Instead of condemning the pleading for this omission, we feel that, in view of the character of the testimony given, it is deserving of commendation for the respect shown to decency.

3. The plaintiff further charges that the defendant, after retiring for the night, would, in these paroxysms, suddenly spring from the bed, lay hold of it, and attempt to drag it about the room, all the time raging against the plaintiff. Can it be doubted that these allegations charge specific acts, proper to be proven upon the charge of extreme cruelty? And especially so when taken in connection with the further allegation, made by plaintiff, that this conduct of defendant continued year after year, and was of daily occurrence for years before said separation, when plaintiff was at home. Acts which tend to destroy the peace of mind are well calculated to impair health and endanger life.

That portion of the answer consisting of denials is insufficient to put in issue many of the most material allegations of the complaint.

We will now examine the evidence, for the purpose of ascertaining whether the proofs correspond with the allegations, and in so doing must bear in mind that no objection was made to the reception of the evidence

under consideration. In our examination of and comments upon the evidence, by reason of the character of such evidence, we shall omit all allusion to the cause which produced the ebullitions of temper on the part of the defendant, testified to by the plaintiff. The determination of any question arising upon the evidence does not depend upon what caused the commission of the acts that are complained of, for no claim is or can be made upon the evidence that the cause of such acts was the fault of the plaintiff. It appears from the evidence that the plaintiff was a railroad conductor, and that while engaged in such employment he was severely injured in a collision; that, by reason of such injuries, he lost two of the fingers on his right hand, and that one of his ankles was so badly crushed as to require amputation, and that, by reason of such injuries, he was confined to his bed a little over eleven months; that often, while plaintiff was so sick, upon his failure to comply with all the requests made by defendant, she would fly into a rage of passion, and abuse the plaintiff, and would seize hold of the bed upon which the plaintiff was lying, and violently shake the same; and the plaintiff did so demean and conduct herself as to make the plaintiff entertain fears for his personal safety. It further appears, from the testimony of the plaintiff, that, at other times than when plaintiff was so confined to his bed, when plaintiff failed to comply with requests made by her, defendant would abuse him, and accuse him falsely of criminal violations of his marriage vows, and her manifestations of ill-temper and impatience, at such times, was such as to render the life of plaintiff with her unbearable, and to permanently destroy his peace and happiness; that there was a continual harassing of the plaintiff by the defendant, as above described, from about the year 1871 up to the time plaintiff left her, in 1878. We think the evidence tended to prove the allegations of the complaint, and that the point made by appellee, that the proof offered does not correspond to the allegations made, is not well taken.

We know of no inflexible rule in this state which precludes the granting of a divorce upon the uncorroborated testimony of the plaintiff in the suit. Each case must depend upon the facts shown, whether by one or more than one witness. When the evidence is sufficient to convince the mind of the truthfulness of the allegations upon which the divorce is asked, such evidence is all that the law requires. When the testimony of the plaintiff, as to the particular acts of the defendant constituting grounds for divorce, is uncontradicted, and such acts are such as must be within the personal knowledge of the defendant, such facts may be taken into consideration in determining the sufficiency of the evidence to warrant a decree. We do not think the second point made by counsel for appellee is well taken.

The sufficiency of the evidence to entitle the plaintiff to a decree of divorce, and the third point made by counsel for appellee, will be considered together. The testimony of the plaintiff was taken before Hon. James A. Dawson as referee, and by him reported to the court. An examination of the testimony, so reported to the court, will show that the referee made but little attempt to give the language of the witness, and it is quite apparent that, as reported, the testimony of the plaintiff presents some conclusions of fact. By this manner of reporting the testimony we are presented with some statements of fact by the witness, and some conclusions which may be the conclusions of the witness, or may be the conclusions of the referee. The fact that the report should give the statements of the witness favors the first view, but the language used shows the conclusions to be the conclusions of the referee. Under the circumstances, no objection having been made by either party to this method of reporting the testimony, we think that, in considering such testimony, the conclusions stated should be deemed as having been properly drawn from the facts sworn to; and this, not only because of the manner in which such testimony is reported, but because there are

sufficient statements of specific facts reported in said testimony to warrant such conclusions. The evidence, showing the frequent violent exhibitions of rage and ill-temper of the defendant against the plaintiff, and her false accusations against him of criminal unfaithfulness to the marriage vow, frequently made during the last five years that plaintiff and defendant lived together, and her conduct towards him when confined to his bed by reason of injuries received in a railroad collision, is suffi-cient to show that the defendant's conduct was such as to permanently destroy the plaintiff's peace and happi-ness, and to render life with her almost unbearable. The plaintiff swears that he entertained fears for his personal safety, and who shall say that his statement is untrue? The conduct of the defendant, in often flying into a rage, and seizing hold of the bed, and violently shaking it, when the plaintiff was confined thereto by reason of the amputation of his leg, exhibits such a disregard for the plaintiff's well-being as to warrant him in entertaining a belief that his personal safety would be endangered by living with defendant. To properly consider the conduct of defendant towards plaintiff at the time of his sickness, and its effect upon him, it must be remembered that, during the eleven months he was confined to his bed, his leg was amputated three times. There is no conflicting testimony in relation to the conduct of the defendant, and there is no evidence tending to show any provocation therefor; therefore the defendant must be held account-able for such conduct, and for its effect upon the plaintiff. The natural effect of such conduct upon an ordinarily sensitive person would be to destroy his peace and hap-piness, and from the destruction of peace and happiness the impairment of health is a natural consequence; and the presumption is that the conduct of the defendant produced the natural and usual result of such conduct. *Haley v. Haley*, 14 Pac. Rep. 92. To authorize a divorce on the ground of cruelty the evidence should show that

the acts complained of are such as that danger to life, limb or health will naturally arise from the continued commission of such acts, but it is not necessary that the evidence should show that actual physical violence has been used.   Extreme cruelty may be as effectually caused by conduct which produces mental suffering, and robs complainant of his or her peace of mind, as by blows inflicted; and to many persons the burden of the mental suffering will be much harder to bear than the burden of any ordinary physical suffering.   These views are sustained by many recent and well-reasoned decisions. *Carpenter v. Carpenter*, 30 Kan. 712–744; 2 Pac. Rep. 122; *Palmer v. Palmer*, 45 Mich. 150; *Friend v. Friend*, 53 Mich. 543; *Berryman v. Berryman*, 59 Mich. 605; *Wheeler v. Wheeler*, 53 Iowa, 511–515; *Kelly v. Kelly*, 18 Nev. 49–55.

But it is contended by counsel for appellee that it is shown by the admissions of plaintiff that he is not entitled to a divorce; and this contention is based solely upon the effect to be given to letters written by the plaintiff to the defendant after their separation, and about a year and nine months before the commencement of this action.   Upon a careful examination of these letters, we fail to find anything that militates in the least against the truth of plaintiff's testimony; but we do think that the letters strongly go to show that the character and disposition of the plaintiff is such that the conduct of the defendant, as shown by the uncontradicted evidence in the case, would destroy the plaintiff's peace of mind, and render life a burden to him; and that, if the poor condition of the plaintiff's health, as shown by said letters, was not the direct result of such conduct, the inevitable result of a continuance of such conduct would be to prevent the plaintiff from recovering his health, if not to seriously endanger his life.   In these letters the plaintiff says to the defendant that she can apply in the Dayton courts for a divorce for his failure to

support her, or for his desertion of her, or for any other ground she may think she has, and that he will not oppose her, no matter what plea she makes. He also says to her that she can sustain the grounds for failure to support and for desertion by members of her own family, and by others in Richmond; that he will submit to anything in order to prevent a stain upon her good name. In these statements of the plaintiff to defendant there is no admission of any fact constituting a ground for divorce by defendant, but rather a statement that defendant could make proof of facts which, if unexplained, would enable her to obtain a divorce. In other words, it is an admission that defendant might show that he did not support her, and that he had deserted her; but it is no admission that he could not show good reasons for his failure to support her, and good cause for his leaving her. Plaintiff also says in one of the letters: "I know I am not able to get a divorce myself, if you oppose it, in Indiana or Ohio." The very most that can be claimed from this, as an admission, is that plaintiff did not, at that time, think he could get a divorce under the laws of Indiana or under the laws of Ohio. It is not an admission of any fact, and it is not an admission of any kind that tends to contradict the testimony given by the plaintiff. The plaintiff may have been advised, and may have believed, that, under the laws of either Indiana or Ohio, he could not make a case, but his belief in no manner affected the facts.

We have discussed all the questions raised in the arguments, but, in the examination of the case, other questions have been raised which we will now proceed to consider. It is urged that the matter set up in defendant's answer as a second defense and cross-complaint is purely a cross-complaint, and that, the plaintiff not having replied thereto, the allegation of desertion without cause stands admitted. The proper consideration of this question requires an examination of the third paragraph

of the complainant, which alleges "that plaintiff and defendant lived and cohabited together as husband and wife from the date of said marriage until the month of January, 1878, when he left her because of the acts of defendant hereinafter complained of, and that since said last-named day, for the same causes, he has remained absent from the defendant, and has refused to cohabit with her since." After setting out, in the fourth paragraph of said complaint, the conduct of defendant of which he complains, he alleges "that, fearing for his life, he was forced to leave her, which he did for these causes, and no other." From these allegations in the complaint it clearly appears that the allegation of desertion without cause, contained in defendant's answer as a second defense and cross-complaint, is not new matter, and, not being new matter, a replication is not required. Code, § 65. What is new matter, and why it may be said to be new matter, is well stated in Pom. Rem. § 691, from which we quote: "The general denial puts in issue all the material averments of· the complaint or petition, and permits the defendant to prove any and all facts which tend to negative those averments or some one or more of them. Whatever fact, if proved, would not thus tend to contradict some allegation of the plaintiff's first pleading, but would tend to establish some circumstance, transaction or conclusion of fact not inconsistent with the truth of all of those allegations, is new matter. It is said to be new, because it is not embraced within the statements of fact made by the plaintiff; it exists outside of the narrative which he had given; and proving it to be true does not disprove a single averment of fact in the complaint or petition, but merely prevents or destroys the legal conclusion as to the plaintiff's rights and the defendant's duties which would otherwise have resulted from all those averments admitted or proved to be true." The plaintiff alleges that he left the defendant because of certain acts committed by her. The defendant alleges

that the plaintiff left her without cause. The defendant's allegation amounts to a denial of plaintiff's allegation, and to nothing more. To call such allegation a cross-complaint is a misnomer. It has no semblance to a cross-complaint, in that no affirmative relief is asked which is based upon said allegation. It is not new matter, in that new matter must, in effect, confess and avoid. Pom. Rem. § 630. "A statement of facts by way of defense, which are merely inconsistent with those stated by the plaintiff, is, in effect, a denial.", Bliss, Code Pl. § 333. When the plaintiff has alleged that he left the defendant for certain causes, and defendant has answered that plaintiff left her without cause, it seems almost an absurdity to say that unless the plaintiff, in a replication to such answer, again states the causes for which he left the defendant, he must be held to have admitted that he left her without cause. We do not think the code requires any such useless proceeding.

Another question raised relates to the effect, as evidence, to be given to a certain decree of the court of common pleas within and for Montgomery county and state of Ohio, which decree was given in evidence by the defendant, and which decree is as follows:

"*Fanny J. Sylvis, Plff., vs. Paulding B. Sylvis, Deft.*

" This cause coming on to be heard on the petition of plaintiff and the answer of the defendant, after hearing the evidence therein, the court, on consideration thereof, finds the allegations of the petition to be true; that the defendant has been guilty of wilful absence for more than three years; and awards the custody of the child named in plaintiff's petition, Howard Paulding Sylvis, to the plaintiff, and orders that the defendant Paulding B. Sylvis pay, for the support of the plaintiff and the child, Howard Paulding Sylvis, named in the petition, the said plaintiff the sum of $10 per month at the end of each month, beginning October 31, 1882, subject to the further order of the court."

This decree was rendered October 16, 1882. For a third defense and cross-complaint the defendant alleges that she obtained a decree in said court on the 16th day of October, 1882, awarding to her the custody of their child, Howard Paulding Sylvis, and the sum of $10 per month at the end of each month, beginning October 31, 1882, subject to the further order of said court. Upon the consideration of this case it is urged that the presumption fairly arises from this decree that the fact whether the plaintiff had separated from the defendant with or without cause was tried and settled in that action. There are many reasons why no such presumption can arise. There is no proof of the nature of the issue in the case in which the decree was rendered. The decree is absolutely barren of any statement or conclusion showing expressly or by implication that any such issue was tried in that action. But, even if the decree disclosed that such issue was determined by the court, the effect of the decree, as evidence in this case, could not be extended so as to make it evidence of any fact not alleged in defendant's third defense and cross-complaint; and, applying it to that defense, as the pleader intended it, and not as he stated it, the decree would be evidence simply that defendant had, in a court of competent jurisdiction, obtained a decree awarding to her the custody of the child, and requiring defendant in that action to pay to plaintiff the sum of $10 per month for the support of herself and the said child. It would not be evidence for this purpose, even, without an amendment to the pleading. The decree cannot be considered as evidence of an adjudication upon any issue made in said action. "The general rule is that, where a party intends to avail himself of a decree as an adjudication upon the subject-matter, and not merely to prove collaterally that the decree was made, he must show the proceedings upon which the decree was founded." 1 Greenl. Ev. (13th ed.) 511. There is no attempt made to show the proceedings upon which

the decree given in evidence was founded. The fact that the decree was received in evidence without objection is urged as a reason why it should be held evidence of a desertion of defendant by plaintiff without cause, but we do not see the force of this reasoning. The decree is in evidence for what it is worth, but it is valueless to prove desertion without cause. The only affirmative relief prayed for by the defendant, except in the general prayer, is based upon the third defense and cross-complaint in her answer, and the relief so demanded is that the plaintiff be ordered to pay her the sum of $150 due on the decree of the court of common pleas of Montgomery county, Ohio. For the purpose of obtaining this relief, proof that a decree was rendered was sufficient, without showing upon what issues the decree passed; and it was for this purpose, and this purpose only, that the decree was offered, and for this purpose only is it evidence.

There is no conflict in the evidence, and we deem it sufficient to authorize a decree for the plaintiff. The judgment should be reversed.

STALLCUP, C., concurs. DE FRANCE, C., dissents.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment of the superior court is reversed and the cause remanded, with directions to enter up a decree of divorce in favor of the plaintiff in error in accordance with the prayer of the complaint.

*Reversed.*