## BARNETT v. BARNETT.

[No. 3,884. Filed October 23, 1901.]

DIVORCE.—*Abandonment.*— *Failure to Support.*—A wife is not en-
titled to a divorce on the ground of abandonment and failure of the
husband to support his family during the two years of his desertion,
where it appears from the evidence that the wife deserted the hus-
band, or that the parties separated by mutual consent, and by
mutual consent remained apart, neither making any effort at recon-
ciliation, and the husband was never requested and never refused
to make provision for his family.  *pp. 467-472.*

SAME.—*Separation.*—*Cause.*—To justify a wife in abandoning her
husband and thereby render him guilty of desertion in a legal sense,
the cause of her abandonment must be a sufficient ground for a
divorce.  *p. 471.*

From Jay Circuit Court; *J. M. Haynes,* Special Judge.

Action by Della Barnett against Seymour Barnett for
divorce. From a judgment for plaintiff, defendant appeals.
*Reversed.*

*R. H. Hartford,* for appellant.

Barnett *v.* Barnett.

Black, C. J.—The appellee obtained judgment for divorce against the appellant upon a complaint charging him with abandonment and failure to support his family during the two years of his desertion, issue being taken by answer of general denial. The overruling of the appellant's motion for a new trial is assigned as error.

In very many particulars the evidence was conflicting and irreconcilable. In determining the question as to the sufficiency of the evidence to sustain the decision, we must uphold the conclusion reached in the trial court if there was evidence which, without consideration of contradictory evidence, sustained the finding. We can not take account of any evidence unfavorable to the court's decision unless it was uncontradicted.

There was evidence tending very strongly to show that the suit was commenced within two years from the separation of the parties, but there was also evidence of contrary tendency. The evidence showed without conflict that the appellee left the domicil of her husband and went to reside with her parents in the same town, some of the evidence being to the effect that this was a few days more than two years before the commencement of this suit. It was also shown without conflict that the appellant, since the separation, had not contributed to the support of the appellee or their infant child residing with her and her parents.

Among the statutory grounds for divorce are abandonment for two years, and the failure of the husband to make reasonable provisions for his family for a period of two years. If it can properly be said that the husband is not shown to have abandoned his wife, but that the proper conclusion from the evidence is that the wife deserted the husband, or that the parties separated by mutual consent and by mutual consent have remained apart, neither making any effort at reconciliation, and the husband never having been requested to contribute to the support of the absentees of his broken up family, and never having refused to make such

provision, then he can not properly be regarded as having failed to make reasonable provisions for his family. *Olinson* v. *Heritage,* 45 Ind. 73, 15 Am. Rep. 258.

The evidence relied on by the appellee, with the evidence on behalf of the appellant uncontradicted, showed that at the time of the separation the parties had been married less than two years, and had a child about three months old. During their married life they had lived with the wife's parents, or in the same residence, except that for about one month before the separation, they resided and kept house in another home in the same town. The appellee was about sixteen years old at the time of the marriage, the appellant being about ten years older. The appellee had a married sister residing in Randolph county, about eighteen miles from appellee's home in Portland, Jay county. This sister was confined and gave birth to a child on the 19th of August, 1897. On the same day, appellee's father took her mother to visit this sister. Some days afterward, her father came with a buggy to the home of these parties and took the appellee and her baby to visit her sister, and she remained there about one week, when her father brought her and her mother in a buggy back to Portland, the appellee being left by her parents in front of the appellant's residence in the evening, about dark. According to the evidence on behalf of the appellee, the separation occurred the next day. The appellee and her father testified that when she was in the buggy about to depart for her visit to her sister, the appellant told her if she went to her sister's, to take her things home, or he would throw them out in the road, to which neither she nor her father made any answer, but without saying anything went away. The appellee, speaking of what occurred the next morning after her return from her visit to her sister, after breakfast, no one but herself and the appellant and the child being present, testified: "He asked me the next morning if I was going home, and before I could give him any answer, he says, 'You had better go, and if you don't,

I will throw your things in the road; and the quicker you go, the better it will be for you.' " She testified that she then told him that she could go; that he then hitched up the buggy, and went away, and did not say where he was going. She procured a dray, and about noon of that day caused her household goods to be taken by it, and went herself with the child to the home of her parents, which had since been the home of the appellee and her child. She testified that she left him because he told her to go. She denied the appellant's testimony relating to their conversations concerning her going to her sister and their conversations after her return, and she did not recite any other conversations between them relating to their separation, or the cause thereof, than as above stated, but testified that when she returned from her sister's he said nothing to her, and she said nothing to him. It, however, was shown that during her absence on the visit he was working at a brickyard, and cooked his own meals and kept house alone; also that on the day of her final departure he was at work helping to hull clover on a neighboring farm, and on his return home at night he learned of her departure. When her household goods were being loaded upon the dray, she told a visiting neighbor that she was going to take her things, that she was going to leave her husband, because she could not live with him, and that he did not know that she was going. The neighbor said to her: "Are you sure you have thought of this well?" and the appellee answered, "Yes, I can't live with him, and I am not going to try to". The same day, in the morning, she told this neighbor that appellant had gone to work.

After this separation, the appellant continued to live at the same house about three months, but neither party in any way sought a resumption of marital relations, and the appellant did not make any provision for the appellee or the child, and he had never refused to provide for them and was not in any manner solicited to do so, but she and the child continued to have their home with the appellee's par-

ents, she sometimes working elsewhere, and leaving the child with the appellee's parents.

The appellant testified that he was ready and willing to live with his wife at all times after she left him, provided she would let her folks alone; that he thereby meant, staying with them all the time; that if she would live in his house, he was willing to live with her; also, that he did not learn that appellee's sister had sent for her, or that this was the reason why she went to visit the sister.

It does not appear that the appellee's parents in any manner sought to prevent the separation or to reconcile the parties, but it is manifest, to say the least, that by their conduct they encouraged the appellee in her course, and furnished ready facilities for the separation. They both were witnesses for her on the trial.

It is sufficiently indicated that there was a disagreement between the married couple in relation to her going away on a visit with her relatives, leaving him to perform the necessary household work while also performing the work of a common laborer for a livelihood. The unseemly words of the husband related in the testimony of the appellee and her father manifestly having relation to her conduct in preferring her relatives to the neglect of her own household duties, were not without some provocation, and probably would not have caused a separation of the parties without outside encouragement to the wife.

If the appellee had not found a ready asylum at the home of her parents in the same town and had not had that refuge in view when she determined upon her departure from the home of her husband, she perhaps would not have regarded the language of her husband to her as a sufficient reason for breaking away from her marriage tie, or, upon full consideration, would have returned to her husband.

The threat of the husband was not carried out, and he does not appear to have taken any steps to carry it out. She readily responded that she could go. There does not appear

Barnett *v.* Barnett.

to have been any continuous ill treatment of the wife. There was a marital quarrel, but time and due forbearance and proper conduct on the part of the wife, it might be expected, would have allayed the irritation of both of the spouses. We can not regard the marriage bond as so slight and flimsy, in contemplation of law, that the union may so readily be dissolved. Upon the whole evidence, if it be not concluded, indeed, that the wife deserted the husband without sufficient provocation, the separation was effected and maintained by consent of the parties. In fact, the wife departed and remained away from the husband's domicil. Nevertheless, if she could be said to have had sufficient provocation, if she was in truth driven away against her wish by the unbearable ill treatment of the husband, it would be his desertion, or, as our statute calls it, abandonment. But to constitute a sufficient provocation for the departure of a wife with the purpose of permanently separating herself from her husband with a view to the dissolution of the marriage tie, the actual cause of such conduct on her part should be something which would be sufficient ground for a divorce. *Olinson* v. *Heritage*, 45 Ind. 73.

In Schouler on Husb. & Wife, §516, it is said: "According to the latest authorities, it may be laid down that legal desertion, in the present sense of our divorce acts, imports three things: (1) An actual cessation of cohabitation for the period specified; (2) the wilful intent of the absent spouse to desert; (3) desertion by that spouse against the will of the other. Unless these three things concur, there is no legal desertion established such as to justify a divorce in the petitioner's favor." In the same connection it is said that a separation procured by a ready acquiescence in a request cannot be construed into legal desertion.

If the husband drive the wife from home by his cruelty, this, besides being the statutory cause of cruel and inhuman treatment, will constitute desertion on his part. Where the cruelty of the husband is carried to the extent that the wife

is compelled thereby to depart, it may be presumed that he intended such effect of his cruelty. Where both are equally at fault in causing the separation, neither can have a divorce on the ground of desertion. And separation by mutual consent cannot constitute legal desertion. The separation must be, in effect, against the consent of the party claiming to be deserted. The courts cannot encourage any inclination or tendency to regard the obligations of wifehood and motherhood as insufferably irksome.

The interest of society in the marriage contract does not seem to have received due consideration in this case.

Judgment reversed; cause remanded for a new trial.