### DAY v. DAY.

(Fourth Division. Fairbanks. October 26, 1916.)

No. 2139.

1. DIVORCE ⊙⊸37(22)—DESERTION.
   Cruelty on the part of either spouse, carried to such an extent as to drive the other from home, will constitute desertion on the part of the spouse inflicting such cruelty.

2. DIVORCE ⊙⊸27(1, 8)—CRUEL AND INHUMAN TREATMENT.
   In determining what conduct constitutes cruelty, regard must be had to the provisions of the statutes and the circumstances of each particular case, keeping always in view the physical and mental condition of the parties and their character and social status. False accusations of infidelity, abuse which causes mental suffering and produces ill health, may constitute cruel and inhuman treatment.

This is an action for divorce under the fourth and fifth provisions of section 1299 of the Compiled Laws of Alaska.

For a first cause of action the plaintiff alleges desertion on the part of the defendant in that, as a culmination of a tempestuous married life for several years, the defendant ordered the plaintiff, on or about the 4th day of September,

---

⊙⊸See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1907, to leave her, and that since said date plaintiff and defendant have not lived together.

For a second cause of action the plaintiff alleges a continuance of cruel and inhuman treatment by the defendant for a period of several years, calculated to impair the mental and physical health of the plaintiff. The acts complained of are alleged to have commenced about six months after the marriage of plaintiff and defendant on the 26th day of October, 1898, to have been practically continuous until the filing of this complaint on the 27th of September, 1915, and to consist of falsely charging the plaintiff with infidelity, gambling, and drunkenness, writing letters to plaintiff's mother, abusing both plaintiff and plaintiff's mother, and writing letters to plaintiff's employers, in which plaintiff was represented to be a person not worthy to be trusted.

It is further alleged that there are two children, the issue of said marriage, Donald, aged 16 years, and Dorothy, aged 13 years; that there is no community property.

Defendant's answer denies the material allegations of both causes of action, contains no counterclaim, and prays that the action be dismissed.

The evidence submitted has been largely in the form of exhibits, of which there were 13, principally letters, introduced on the part of the plaintiff, and 42, all letters, on the part of the defendant.

McGowan & Clark, of Fairbanks, for plaintiff.

A. R. Heilig, of Fairbanks, for defendant.

BUNNELL, District Judge. The form of desertion charged in the first cause of action is well defined in the following:

"Cruelty on the part of either spouse, carried to such an extent as to drive the other from home, will constitute desertion on the part of the spouse inflicting such cruelty." Barnett v. Barnett, 27 Ind. App. 466, 61 N. E. 737.

"Where either party leaves the other because of cruel treatment toward the one leaving, it is desertion by the one forcing the other to go." McVickar v. McVickar, 46 N. J. Eq. 490, 19 Atl. 249, 19 Am. St. Rep. 422; 9 Ruling Case Law, §§ 149, 150.

There is some testimony to the effect that the plaintiff on or about the 4th day of September, 1907, after having been the object of a storm of abuse of unusual severity visited

upon him by the defendant, availed himself of the privilege
extended by the defendant to leave, and forthwith departed.
It may have been that this action upon his part was entirely
justified, or that the actions of the defendant were with the
best intentions; that, as she testified, her object was to re-
form him in spite of his protestations of innocence; that
after eight years of similar attacks he should have, for the
sake of his family, surrendered and admitted himself to be
guilty of all the frailties suggested by the actively suspicious
and imaginative mind of the defendant. Be that as it may,
I am inclined to the opinion that he has forfeited his right to
a divorce on the ground of desertion, because of the statements
contained in his letters subsequent to 1907.

Our statute provides that the dissolution of the marriage
contract may be declared at the action of the injured party,
for cruel and inhuman treatment calculated to impair health
or endanger life.

Much difficulty has been experienced by the court in defin-
ing the phrase "cruel and inhuman treatment." Certain acts
are easily designated as "cruel and inhuman," but what may be
cruel and inhuman on the part of one toward another in one
instance may amount only to an indignity under different cir-
cumstances or between different persons, so that, as has been
well expressed:

"In determining what conduct constitutes cruelty, regard must
be had to the provisions of the statutes and the circumstances of
each particular case, keeping always in view the physical and
mental condition of the parties and their character and social
status." 14 Cyc. p. 599, and cases cited.

From this it necessarily follows that false accusations
of infidelity, abuse which causes mental suffering and pro-
duces ill health, may constitute cruel and inhuman treat-
ment.

"Acts and words may be construed as constituting cruel and in-
human treatment, though they cause no physical pain." Atherton v.
Atherton, 82 Hun, 179, 31 N. Y. Supp. 977.

It is contended that "calculate," under our statute, can mean
only "intend." I cannot agree with such a conclusion, for if
either party to a marriage contract should persistently indulge
in false and vile accusations of the other, to such an extent

that the one so accused suffered an impairment of health, it would seem that the one thus aggrieved should not be required to prove that the offender intended such a result. One is ordinarily presumed to intend the natural consequences of his own wrongful acts. If the wrongful acts produce an evil result, it is too subtle a distinction for the wrongdoer to hide behind a self-serving declaration that it. was not intended, or to assign some other excuse.

While "calculate" is defined by Webster, "to intend," "calculated" is defined as "likely to produce a certain effect, whether intended or not."

The evidence shows that, about six months after the marriage of plaintiff and defendant, the defendant became suspicious of the conduct of plaintiff. As a basis of these suspicions, there is some evidence to show that the plaintiff indulged in an occasional game of cards for money in small amounts, and that he took an occasional drink of intoxicating liquor, as seems to have been the custom in the frontier country in which they lived, and on one occasion "got drunk." It also appears that he was the recipient of at least two letters from a young lady with whom he was well acquainted, she having been a member of the family where the plaintiff boarded for some time. The contents of the letters, concerning which there is a decided conflict of testimony, became known to the defendant and were the cause of many a quarrel. As years passed by, it seems that the defendant persistently accused the plaintiff of infidelity, gambling, and drunkenness, with the result that the entire period from 1899 to the 4th of September, 1907, was a continual scene of domestic turmoil, interrupted only by an occasional "make-up," or discontinued during the periods plaintiff was engaged at work away from his home.

The two children, Donald. and Dorothy, were born during this period; but even this blessing seems to have failed to bring to the home a reorganization of domestic affairs and a losing sight by the defendant of petty troubles. The plaintiff appears to have been industrious, and to have supported his wife and children in a manner consistent with his income. The plaintiff testified that during this time, and as a result of the accusations made against him by the defendant, he was subject to much embarrassment with his employers, was forced

to quit work, seek employment elsewhere, and again leave and seek another job; that such conduct on the part of the defendant caused him grievous mental suffering, pain and anguish, to such an extent that he was becoming incapacitated from pursuing his usual vocation.

There is also testimony to show that, after leaving his home in 1907 and going to Seattle, where he finally found employment, letters were received from the defendant by his employer in which at least some accusations were preferred against him. Leaving Seattle in 1908, the plaintiff came to Fairbanks, since which time he has resided in several of the interior towns of Alaska. The testimony shows that, while the plaintiff was employed by the Northern Commercial Company at Fairbanks, a letter was received by the company from the defendant, in which a continuation of the same or similar charges was made against the plaintiff. There is also evidence to show that the defendant, even since her arrival in Alaska in March of this year, has in a measure continued to attack the character and reputation of the plaintiff without just cause.

Since 1907 it seems that many letters, some of which have been introduced in evidence, were written to the mother of the plaintiff, and to other relatives. The contents thereof furnish conclusive proof of a course of conduct on the part of the defendant towards this plaintiff and his mother of extraordinary vindictiveness, replete with accusations, malicious and unwarranted in the extreme.

During the last four years the plaintiff has contributed to the support of his family $50 per month, with an extra $100 for Christmas, an amount nearly equal to his total income in Texas.

It does not appear that the plaintiff is a man of an abandoned heart, or is guilty of the many charges made against him in person by the defendant, and to his relatives and employers by her letters. The many letters of the plaintiff (exhibits in this case) to his family may well be called model letters from a husband and a father. It is a matter of regret that some of the good thoughts expressed therein are claimed by the plaintiff to have been penned with a different purpose and intended in a measure to mislead the defendant. This is the only thing I have observed to discredit his testimony on the stand in any way. The plaintiff claims that he did not want the de-

fendant to follow him, and that he therefore always held out the idea that some day he would return. While this might be sufficient to permit the court to reject his entire testimony, I am of the opinion that it is the duty of the court to apply the rules of evidence for the sole purpose of determining the facts.

The testimony of the defendant is subject to much criticism. Many statements have been carelessly made, to say the least, although due consideration has been given to the fact that she is of a nervous temperament and intensely interested in the result of this litigation.

The defendant has been seriously at fault. This plaintiff I find to have been entitled to receive such treatment at the hands of the defendant as was calculated, after he had done his part, to contribute to the comforts of a home. His duty was to provide for his family the necessities of life, according to his station in life—to love and protect them as a husband and father should. In return, he had the right to receive from his wife at least a reasonable effort to contribute to the happiness of the home—our greatest institution—which he sought to establish. If, on the other hand, without just cause—and I find there was no sufficient cause or provocation—he was deprived of his home as such, was denied the right to be present with and to receive the affection and esteem of his children from childhood to maturity, was held up to his relatives and employers as an object of degeneracy and immorality, by false accusations on the part of his wife, to such an extent that it caused him mental suffering, pain, and anguish, and impaired his health, then he is entitled to a divorce as set forth in his second cause of action. The decree will be granted.

See Eggerth v. Eggerth, 15 Or. 626, 16 Pac. 650; Sylvis v. Sylvis, 11 Colo. 319, 17 Pac. 912; Marks v. Marks, 56 Minn. 264, 57 N. W. 651, 45 Am. St. Rep. 466; Reed v. Reed, 4 Nev. 395; MacDonald v. MacDonald, 155 Cal. 665, 102 Pac. 927, 25 L. R. A. (N. S.) 45.

The defendant will retain the custody of the children, and for their support the plaintiff is ordered to pay to her or to her attorney the sum of $60 per month until the further order of this court. Findings of fact, conclusions of law, judgment, and decree may be prepared and submitted in accordance with the views herein expressed.