EDWARD W. WILLIAMS v. LAURA F. WILLIAMS.[1]

June 28, 1907.

Nos. 15,170—(112).

**Divorce—Cruel and Inhuman Treatment.**

Cruel and inhuman treatment, as a ground for absolute divorce, consists of actual or threatened physical violence, of such a character as to endanger personal health and safety, or to create a reasonable apprehension thereof, or of such other equivalent and serious misconduct which, unjustified in fact, is so plainly subversive of the relationship of husband and wife as to make it impossible to discharge the duties of married life and to attain its objects, and to be so hopelessly inimical to the health or the personal welfare of the injured party as to render continuance of the relationship intolerable.

**False Charges of Infidelity.**

Repeated charges, made by the wife against the husband of infidelity with two women, one of which charges the wife herself did not believe to be true, and neither of which charges was shown to have been based on reasonable or probable cause, were published by her for many years in private and in public. They resulted in his being the subject of much discussion, scandal, and ridicule, in his great personal humiliation, in injury to his business standing, and in the practical separation of the parties. These charges, taken in connection with many grave circumstances of aggravation, are *held* sufficient to constitute cruel and inhuman treatment, and to entitle the husband to an absolute divorce.

Action in the district court for Winona county for an absolute divorce. The case was tried before Buckham, J., who found in favor of plaintiff. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Henry M. Lamberton,* for appellant.

*Brown, Abbott & Somsen,* for respondent.

JAGGARD, J.

This was an action for an absolute divorce, brought by the husband, plaintiff and respondent, against the wife, the defendant and appellant. The complaint set forth the marriage and the existence of two

[1]Reported in 112 N. W. 528.

children—Hazel, aged twenty-four, and Olive, aged eighteen. The first of the grounds upon which the divorce was sought consisted of cruel and inhuman treatment, detailed in nineteen paragraphs, without a charge of actual physical violence. Part of this cruel and inhuman treatment consisted in accusing the plaintiff of infidelity, in spying, and in publishing such accusations. The second ground was desertion. Defendant denied cruel and inhuman treatment, and alleged in justification of her conduct improper conduct of the plaintiff with a young woman who will hereafter be referred to as the plaintiff's bookkeeper. She also filed a cross-complaint asking a separation from bed and board upon the ground of the husband's cruel and inhuman treatment, improper conduct with the said young woman, and desertion. The court found facts in detail, and therefrom concluded as a matter of law that neither party had deserted the other; that the wife had been guilty of cruel and inhuman treatment of the husband within the meaning of the divorce law; and that the husband had not been so guilty with reference to the wife. The court, therefore, granted the plaintiff an absolute divorce, but required him to provide for the wife's support for the rest of her life, unless she should remarry, in the sum of $1,000 per annum. From an order denying defendant's motion to grant a new trial, this appeal was taken.

1. An examination of the record has satisfied us that the findings of fact of the trial court are justified by the evidence, within the familiar rule on that subject. This is peculiarly a case in which those findings are entitled to the usual presumption of law in their favor. The trial judge calls attention to "one remarkable feature of the trial, to wit, the manifest deliberate perjury of some of the witnesses who then gave testimony." Having seen the witnesses and heard their testimony, he was in an altogether better position to determine what the truth was than we can possibly be in, with only the printed record before us. We proceed, accordingly, to refer to some of the salient features of the evidence, not in order that we may determine the merits of the controversies de novo, but the sufficiency of the evidence to sustain the trial court's findings of fact, supported by the presumption in their favor.

The charges of unchastity made by the wife against the husband continued during a period of more than eighteen years. The present

inquiry, however, is limited to the last ten years. The first of two recent aggravated cases concerned a young woman who, the defendant herself testified, was "a respectable lady," and against whose character she knew nothing. The defendant, indeed, denied having charged her husband with infidelity with this particular woman. Her testimony in this regard was demonstrated to have been false.

The second of such cases concerned another young woman, a bookkeeper in plaintiff's employ. Defendant had a hole bored in a covered stairway, through which she watched her husband and this bookkeeper work at his place of business in the evenings for three or four weeks. Strong proof of the lack of foundation for her accusations is to be found in her own testimony as to what she thus observed. Many circumstances were referred to as showing some reasonable ground for her suspicion. Careful examination of the record with respect to all of them has satisfied us that the trial court properly regarded them as inadequate, and that her accusations were not justified by probable cause. In quaint, ingenious, and conspicuous ways she spied on her husband and the young woman, and induced and employed many other persons to watch them. The publication of the scandal covered a long period of time, and occurred at divers places to various people. The trial court was justified in finding that the wife caused "many of [the husband's] acquaintances and business associates to suspect the existence of criminal relations between the plaintiff and his women employees, and has subjected him to much discussion, scandal, and ridicule in this regard, and has greatly humiliated him, and has seriously injured his reputation and business standing." The court did not find that "such conduct on her part has to any considerable extent injured his health." It certainly, however, constituted a serious menace, and substantially tended to injure his nervous system, as it had destroyed his peace of mind and domestic happiness.

The court also found, and was justified in finding, that neither party was ever guilty of actual serious physical violence toward the other, nor had any reason to fear such violence. There was testimony that the wife tried to induce one witness to "get a lot of women together and have [the witness'] son to be the head leader of the mall, and give them [the husband and the bookkeeper] a coat of tar and feathers." She offered another $150 if he would "shoot the brute" (her husband),

and another $5 to hold her husband while she went in his place of business and horsewhipped the girl. This evidence, although corroborated, is justly subject to grave criticism. The wife denied the facts thus testified to; but her own testimony on material points the trial court properly held to have been successfully contradicted. Whatever truth there may have been in these charges, there is, however, no reasonable controversy that her recurrences to the subject of these young women occasioned domestic broils innumerable, distressing, and, on the wife's part, accompanied by paroxysms of rage. The scene of these eruptions of what the trial court calls her "somewhat violent temper and morbidly jealous disposition" was indifferently the home, or where the unhappy pair had gone in search of peace or pleasure, or the husband's place of business, or in public generally. There was proof, for example, of an outbreak of her passion at the table which drove one of the children upstairs. The wife ran around the table and seized a carving knife. The husband and the other daughter, at the end of a couple of hours, "succeeded in quieting her down."

We regard as insignificant here the trial court's finding of fact that the tenderness of her nature, which she did not manifest to her husband, led to the wife's employment to a considerable extent in matters relating to the Society for the Prevention of Cruelty to Animals, against the known wishes of the plaintiff, and that she neglected the management of her household. In that connection, however, a multitude of circumstances appearing in the record—and it is the record only of which we speak—must be considered. Here, however, only their general result may be stated. The husband's success as a large manufacturer made possible his sustained generosity to his family, but brought him nothing save a house divided against itself. The home was a place of torment. His efforts to attain peace there and elsewhere encountered only reproach and vituperation as fluent as it has been held to have been unjust, and as indelicate as it was irrepressible. The epithets which the wife, according to the record, applied to the women she suspected, are unfit for repetition here: As the trial court remarked: They were "more suitable to a brothel than to polite society." Her abuse of her husband extended to charges of disease et similiter. The years the husband spent in a vain endeavor to mollify the acerbities of this feminine disposition simply extended her oppor-

tunities for variation in verbal assault and multiplied the exhibitions of his domestic ignominy. The one certainty in his relations with her was his intolerable and increasing misery.

The plaintiff was not a saint. A man of education, ambitious in business, and commanding general respect, he sometimes resented—to speak euphemistically—her curtain lectures with an emphasis which, in view of the provocation, was not held to have been undue. In its memorandum the trial court remarked with certain justice: "The parties are already divorced, except in name, and it is unthinkable that under present conditions they should ever live together again as husband and wife, or that the plaintiff should be compelled to continue to call by the name of wife a woman who, on such slight grounds, publicly and persistently asserts her belief in his adulterous relations with other women. While the plaintiff might have shown more consideration than he sometimes did for his wife's feelings, and might have done many things to allay her suspicions, he was certainly under no legal obligations to allow her jealousy to interfere with the management of his business, or force him to discharge those who were the subjects of her suspicion, so long as he in no manner actually violated his obligations as a husband."

2. The trial court was justified in its conclusion of law that the defendant had been guilty of "cruel and inhuman treatment," within the meaning of the divorce laws of this state. There are two well-recognized classes of such misconduct. The first is the obvious one of actual or threatened physical violence of such a character as to endanger life, limb, or health, or to create a reasonable apprehension of it. Milford v. Milford, 36 L. J. (N. S.) P. & M. 30, 37 L. J. (N. S.) P. & M. 77. The second is such other equivalent and serious misconduct which, unjustified in fact, is so plainly subversive of the relationship of husband and wife as to make it impossible that the duties of married life should be discharged, or its objects attained, and. to be so hopelessly inimical to the health or the personal welfare of the injured party as to render continuance of the relationship intolerable.

Many cases on this subject will be found collected in 9 Am. & Eng. Enc. (2d Ed.) 788, and 14 Cyc. 599. The following cases are especially instructive: Rice v. Rice, 6 Ind. 100, 105; Williams v. Williams, 2 Coke, 768; Bailey v. Bailey, 97 Mass. 373; Robinson v. Robinson, 66

N. H. 600, 23 Atl. 362, 15 L. R. A. 121, 49 Am. St. 632; Reinhard v. Reinhard, 96 Wis. 555, 71 N. W. 803, 65 Am. St. 66. A very valuable note on this subject will be found on page 69 of 65 Am. St. in which the authorities up to that date are fully reviewed. In Carpenter v. Carpenter, 30 Kan. 712, 2 Pac. 122, 46 Am. 108, a case similar to the one at bar, it is said: "It was formerly thought that to constitute extreme cruelty, such as would authorize the granting of a divorce, physical violence is necessary; but the modern and better considered cases have repudiated this doctrine as taking too low and sensual a view of the marriage relation, and it is now very generally held that any unjustifiable conduct on the part of either the husband or the wife, which so grievously wounds the mental feelings of the other, or so utterly destroys the peace of mind of the other as to seriously impair the bodily health, or endanger the life of the other, or such as * * * utterly destroys the legitimate ends and objects of matrimony, constitutes 'extreme cruelty' under the statutes, although no physical or personal violence may be inflicted, or even threatened." So in Barnes v. Barnes, 95 Cal. 171, 30 Pac. 298, 16 L. R. A. 660, which also closely resembles the present case, the court said: "It may be true that there is 'no scale by which to gauge the purely mental susceptibilities and sufferings' of another, nor is it necessary that there should be any exact measure. The common judgment of mankind recognizes the fact that there may be unfounded charges and cruel imputations which are not more easily borne than physical bruises."

Such cruelty may consist of (1) words inflicting indignity and threatening pain, excluding mere words of abuse, although opprobrious words may be shown by way of aggravation; (2) of a single act of sufficiently aggravated character, or by a course of conduct including minor acts of a similar kind by way of aggravation; (3) of other general misconduct. Referee Dwight, in Uhlmann v. Uhlmann, approved 17 Abb. N. C. 236, 256, wherein a charge of infidelity, made by the wife against the husband, was held to justify a judicial separation. There is universal agreement on the part of all the authorities that the causes justifying divorce for cruelty must be grave and weighty, and such as show the absolute impossibility that the duties of married life can be discharged. Lord Stowell, in Evans v. Evans, 1 Hag. Con. 35; 4 Eng.

Ecc. 310; Childs v. Childs, 49 Md. 509. The point of difference is in what causes are sufficiently grave and weighty.

Whether or not it is essential, as defendant contends, that injury to health be the result, is determined by the relevant statutory provisions (see Robinson v. Robinson, 66 N. H. 600, 23 Atl. 363, 365, 15 L. R. A. 121, 49 Am. St. 632), and by the character of the facts alleged to show cruelty. In this connection we are referred to two decisions of this court which we do not regard as controlling here. Naturally, in cases in which the cruelty is made up of a series of minor acts, not one of which is alone sufficiently aggravated to approximate cruelty, but resulting in "a lifelong continuance of misery," such injury has been held to be a requisite of cruelty. Thus "a systematic course of ill treatment, consisting of continual scolding and fault-finding, using unkind language, studied contempt, and many other petty acts of a malicious nature, may, when sufficiently long continued, and when producing sufficiently serious results, constitute cruel and inhuman treatment, and be sufficient ground for the granting of a divorce." Marks v. Marks, 56 Minn. 264, 57 N. W. 651, 45 Am. St. 466. In a later report of the same case (62 Minn. 212, 64 N. W. 561) Collins, J., said: "His (the husband's) treatment during the ten years we have mentioned was about as cruel and inhuman as it could have been without inflicting corporal punishment. The evidence before us establishes an exceptionally strong case of this character, and we wish here to emphasize what was, in substance, said in our former opinion—that to warrant the granting of a divorce on the ground of cruel and inhuman treatment, where there is no proof of overt bodily harm, actually inflicted or threatened, the evidence must be strong and convincing, the course of ill treatment complained of long continued, of serious character, and, further, that it must have had an injurious effect upon the health of the complainant. We think this was such a case." In Goff v. Goff (W. Va.) 53 S. E. 769, will be found the latest discussion of the principles and review of the decisions in this connection.

Cases involving the charge of infidelity by one spouse against the other constitute a class more or less of its own kind. See 14 Cyc. 606 (4). In Patterson v. Patterson, 3 H. L. Cas. 308, 313, is found Lord Brougham's much quoted query: "Suppose a man constantly called his virtuous wife a strumpet, saying so, not to herself alone, but before

everybody.  As far as suffering was concerned, he had better kick her; but would such conduct give her a right to sue for a divorce?"  The answer was that under the Scottish law it might.  For Bankton says: "There may be a divorce on account of the husband's cruelty or mal-treatment."  However the rule may be in Scotland or England, it is well settled in this country that where a charge of infidelity is made by a husband against a wife, it is sufficient to constitute cruelty within the meaning of the divorce laws that the charge be made maliciously and without probable cause.  Wagner v. Wagner, 36 Minn. 239, 30 N. W. 766; Driver v. Driver (Ind.) 52 N. E. 401; Graft v. Graft, 76 Ind. 136; Haight v. Haight (Iowa) 82 N. W. 443; Goodman v. Goodman, 26 Mich. 417; Cook v. Cook, 11 N. J. Eq. 195; Crow v. Crow, 29 Ore. 392, 45 Pac. 761, and cases cited; Kelly v. Kelly, 18 Nev. 49, 1 Pac. 194, 15 Am. 732; Jones v. Jones, 60 Tex. 451, 460; Bahn v. Bahn, 62 Tex. 518, 50 Am. 539; Pinkard v. Pinkard, 14 Tex. 356, 65 Am. Dec. 129; Warner v. Warner, 54 Mich. 492, 20 N. W. 557; De Meli v. De Meli, 67 How. Pr. 20; Kennedy v. Kennedy, 60 How. Pr. 151.

The question then arises whether the same rule applies to such an accusation made by the wife against the husband.  In Barnes v. Barnes, approving Carpenter v. Carpenter, both supra, the divorce was granted by the trial court to the husband because of his wife's cruelty in mak-ing unfounded charges of infidelity, although it was not even alleged in the complaint, nor found by the court, that the charges in this case had caused any impairment of the plaintiff's health.  A number of decisions are to the same general effect.  In Smith v. Smith, 8 Ore. 100, 101, it was said: "It is now the settled law of this state that such accusation is sufficient cause for a divorce.  * * *  Neither a husband nor wife can claim a right to continue the marriage relation while falsely charg-ing the other with unchastity.  No domestic happiness or peace can be expected to exist between parties thus falsely criminating each other."  Under a statute making "extreme cruelty" ground for divorce, the Colorado Supreme Court in Sylvis v. Sylvis, 11 Colo. 319, 17 Pac. 912, 917, held the accusation by a wife of her husband's infidelity was a ground for divorce.  "Extreme cruelty may be as effectually caused by conduct which produces mental suffering and robs complainant of his or her peace of mind as by blows inflicted; and to many persons the burden of the mental suffering will be much harder to bear than the

burden of any ordinary physical suffering." And see Uhlmann v. Uhlmann, 17 Abb. N. C. 236; Whitmore v. Whitmore, 49 Mich. 417, 13 N. W. 800; Kelly v. Kelly, supra; Crow v. Crow, 29 Ore. 392, 45 Pac. 761.

As showing that the mere charge of infidelity made by the wife against the husband is insufficient to show cruelty, we are referred to Pfannebecker v. Pfannebecker (Iowa) 110 N. W. 622. It was there said: "The difference in the situation of the husband is manifest. If innocent, he is not likely to regard seriously idle suspicions, even though lodged against him by his wife; nor is the effect on his character and position in society to be compared to that upon a female. On this ground the supreme court of Texas has held this charge against the husband does not amount to cruelty, unless it is shown that from his temperament or calling it has or will be likely to produce mental suffering beyond the ordinary effect which such a charge would naturally have upon a man. McAlister v. McAlister, 71 Tex. 695, 10 S. W. 294." In Pfannebecker v. Pfannebecker, the defendant went no further than to indicate her suspicions; and this, as expressed to others, save in one instance, did not reach plaintiff. The court held that under the divorce statute, defining cruelty as "such inhuman treatment as to endanger life," the question whether any spouse had been so treated or injured as to endanger life is a question of fact, and that the testimony there failed to make out a case for divorce. Properly or improperly, it regarded men as of tougher fibre than women with respect to the personal effect of such defamation. In entire harmony with the right of the plaintiff to prevail here, the court refers to other decisions as follows: "In Carpenter v. Carpenter, supra, the wife not only accused the husband of infidelity to the marriage relation, but sought for scandal, affecting his moral standing, to humiliate him in his own estimation and to disgrace him in the opinion of all good people, and her conduct was adjudged to amount to extreme cruelty. In Kline v. Kline, 49 Mich. 419, 13 N. W. 800, the charge of adultery was coupled with other abuse indicative of ungovernable violence of temper."

The Iowa court also referred to Holyoke v. Holyoke, 78 Me. 404, 6 Atl. 827. That case involved a charge of infidelity, without cause, by the wife against the husband. It was asserted that her conduct in this and other respects seriously injured or threatened to injure and im-

pair his physical health. The charge arose under a statute which provided as one ground for divorce "extreme cruelty" and as another "cruel and abusive treatment." In sustaining the libel, the court gratuitously took occasion to say: "Few cases have been found that hold a false charge of infidelity to be legal cruelty, and these were mostly adjudged in the Western states." Apart from the fact that this was purely obiter, and that the court had previously cited with approval in support of an earlier proposition the decisions of California, which is in the front rank of those Western states announcing that doctrine, the Maine court followed step by step, and mark after mark, the trail these Western courts had blazed. It said: "Words and deportment may work injury as deplorable as violence to the person. 'I will speak daggers to her, but use none,' says Shakespeare. Temperament and character so widely differ that conduct cruel to one might scarcely annoy a more callous nature. Having in mind the sacred character of the marital relation, and its influence on the happiness and purity of society, as well as upon individuals, not overlooking considerations that may not freely be discussed, each particular case must be judged of by its own particular facts and circumstances. Divorce should not be a panacea for the infelicities of married life. If disappointment, suffering, and sorrow, even, be incident to that relation, they must be endured. The marriage yoke, by mutual forbearance, must be worn, even though it ride unevenly, and has become burdensome withal. Public policy requires that it should be so. Remove the allurements of divorce at pleasure, and husbands and wives will the more zealously strive to even the burdens and vexations of life, and soften by mutual accommodation, so as to enjoy their marriage relation. Deplorable as it is, from the infirmities of human nature cases occur where a wilful disregard of marital duty by act or word either works or threatens injury so serious that a continuance of cohabitation in marriage cannot be permitted with safety to the personal welfare and health of the injured party." To the same effect is a luminous decision by Mr. Justice Smith in Jones v. Jones, 62 N. H. 463, 464, approving, inter alia, at page 466, Bishop, Mar. & Div. (6th Ed.) §§ 730, 733.

These authorities, taken as a whole, recognize that cases involving the charge of infidelity, made by one spouse against the other, are in a measure sui generis; that as a rule more proof of such cruelty is re-

quired when the charge is made by the wife than when made by the husband; that the extent and effect on reputation and business of the circulation of the imputation is one material consideration, and the effect on health another; that the legal aspect of the conduct complained of is to be determined in view of circumstances of aggravation in each particular case; and that whether as a result a case of sufficiently grave import has been made out in an individual case is a question of fact.

3. The abstract question whether the mere charge of infidelity by a wife against a husband is sufficient, without more, to constitute cruelty is not before us. Here such charges were merely the storm center. Within the spirit, and substantially within the letter, of these authorities, and in accordance with the dictates of reason, the legal conclusion of the trial court was correct.

4. The defense of condonation of defendant's conduct was not pleaded, nor from the record are we able to see that defendant's counsel would have been justified, in good faith to the court, in interposing that defense. The evidence to which reference has been made as constituting voluntary litigation of such an issue does not satisfy us that the issue was tried by consent; nor does it show any forgiveness in fact, but rather an instance of domestic unhappiness in which the wife does not appear to advantage. The court made no finding on the subject. If defendant had moved for such a finding—which he did not—we think the trial court should have denied that motion. The matter, therefore, is not, strictly speaking, before us.

Order affirmed.