## DORIS A. TSCHIDA v. WILLIAM C. TSCHIDA.[1]

February 11, 1927.

No. 25,777.

**Cruel and inhuman treatment warranting a divorce.**

1. Conduct and associations of a spouse with one of the opposite sex, carried on against the protest of the one wronged and of a character justifying the belief that the object is criminal, may constitute cruel and inhuman treatment within the meaning of the divorce statute.

**New trial denied.**

2. There were no errors warranting a new trial.

Divorce, 19 C. J. p. 51 n. 62; p. 143 n. 53.

----

See note in 2 L. R. A. (N. S.) 669; 9 R. C. L. 351; 6 R. C. L. Supp. 548.

Plaintiff appealed from an order of the district court for Goodhue county, Schultz, J., denying her motion for a new trial. Affirmed.

*Albert Mohn,* for appellant.

*Charles P. Hall* and *P. E. Sargent,* for respondent.

HOLT, J.

Plaintiff sued for a divorce on the ground of cruel and inhuman treatment. Defendant answered denying the accusation and by

[1]Reported in 212 N. W. 193.

cross-bill demanded a divorce from plaintiff upon the same ground. The findings were that plaintiff's allegations were not sustained but that defendant's were true. Plaintiff appeals from the order denying her motion for a new trial.

The first proposition is that defendant's pleading, even as amended by the court in the findings, does not state a cause for divorce. There being nothing tending to show abuse of judicial discretion, we shall spend no time upon the propriety of allowing the amendment. It must be conceded that the pleading is open to criticism in that general conclusions are more abundant than specific statements of fact. But a summary of the allegations and the findings as to the cruel and inhuman treatment to which plaintiff subjected defendant may be stated thus:

Defendant is a journeyman plumber and has to work a great part of the time away from Red Wing, where the family has resided for years. For some time previous to August, 1925, he had worked in St. Paul and his custom was to come to Red Wing on Saturday evenings and remain with his family until Sunday evening or Monday morning. In the spring and summer one Clark, a married man whose wife was not then living at Red Wing, got acquainted with plaintiff and began to visit quite freely. He worked in a garage where the 16-year-old son of the parties hereto was assisting. From certain things which defendant saw and learned he grew suspicious of the associations of plaintiff and Clark. When on Sunday evening August 23, 1925, plaintiff pleaded illness as an excuse for not as usual accompanying defendant to the train he was to take to St. Paul, he, instead of taking the train, returned secretly to the vicinity of his home where shortly Clark was encountered. Defendant then accused Clark and his wife of wrongdoing, and he claimed that then and afterwards he pleaded with her to abandon her associations with Clark, but that she refused. He thereupon told her to leave and she went to a hotel for a few days, then to a private home for several weeks, and afterwards to a rooming house. At each of these places Clark came to stay for a shorter or longer period and continued on intimate terms with her. No good purpose will be served by going into details. It is enough to state that

while the evidence did not attempt to prove any definite adulterous act, it did establish such conduct on the part of plaintiff and Clark that defendant had good reason to believe that their relations were criminal, and that plaintiff proposed to continue therein. The effect upon defendant, compelled to be absent from the home when the situation was such, can well be imagined, and it is not difficult to find support for the finding that plaintiff's conduct with Clark seriously affected defendant mentally and physically.

Appellant advances the proposition that even adultery is not cruel and inhuman treatment justifying a divorce to the wronged spouse. Formerly courts were inclined to limit cruelty as cause for divorce to physical maltreatment. But such is not now the view. Williams v. Williams, 101 Minn. 400, 112 N. W. 528. Mental anguish may more perniciously affect health and life than bodily bruises. The following cases indicate that the conduct of a spouse with one of the opposite sex, while not furnishing adequate proof of actual adultery, may appear so cogent and persuasive of wrongdoing that the court may find that it amounts to cruel and inhuman treatment within the statutory ground for divorce: Van Camp v. Van Camp, 53 Cal. App. 17, 199 Pac. 885; Aitchison v. Aitchison, 99 Iowa, 93, 68 N. W. 573; Craig v. Craig, 129 Iowa, 192, 105 N. W. 446, 2 L. R. A. (N. S.) 669; Burns v. Burns, 173 Ky. 105, 190 S. W. 683; Bearinger v. Bearinger, 170 Mich. 661, 136 N. W. 1117; Eistedt v. Eistedt, 187 Mich. 371, 153 N. W. 676; Hofmann v. Hofmann, 232 N. Y. 215, 133 N. E. 450.

We think plaintiff's conduct with Clark justified finding cruel and inhuman conduct warranting divorce. There was testimony that the children of the parties and others could not help noticing it; that defendant's effort to break it off by moving the family to St. Paul met with refusal; and that it was continued after vigorous protests by defendant. True, there is also testimony that their relations were innocent and entirely with defendant's consent, until the rupture of August 23, 1925. But it was the province of the trial court to determine the facts, and we cannot interfere with findings supported by credible testimony.

There are numerous exceptions to rulings on evidence. Extreme technicality characterized the objections of the attorneys on both sides. Certain rulings in respect thereto can hardly be justified, but the trial was to the court, and we see nothing in the testimony excluded or received, over appellant's objection, that could in any manner have changed the outcome.

Appellant cites Hancock v. Hancock, 55 Fla. 680, 45 So. 1020, 15 L. R. A. (N. S.) 670, and Benson v. Benson, 45 Utah, 514, 146 Pac. 564, as supporting the contention that neither the cross-bill as amended alleges nor the evidence proves cruel and inhuman treatment warranting divorce. Both cases were decided on demurrers holding that the cruelty charged amounted to no more than flirting with persons of the opposite sex. However, the Utah court is in accord with the authorities first cited. In Holm v. Holm, 44 Utah, 242, 139 Pac. 937, the same justice who spoke for the court in the Benson case, after stating that the evidence did not sustain a finding of adultery, said:

"But we think he has sustained the burden as to the charge of cruelty causing great mental distress. The record discloses that the plaintiff by matrimonial misconduct transferred her affections from her husband to the boarder, was unduly and unwomanly familiar with and attentive to him, sought his company and he hers, against the defendant's consent visited places of public amusements with him * * *. We think the record presents a case of cruelty causing great mental distress," etc.

and a decree was awarded defendant. The case at bar is almost identical.

The order is affirmed.