# HILMA ELLINGSON v. HENRY ELLINGSON.[1]

November 5, 1948.

No. 34,742.

---
[1]Reported in 34 N. W. (2d) 356.

*Monson & Donoho,* for appellant.
*Clarence H. Kleffman,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court denying plaintiff a divorce from defendant or separate maintenance.

The parties were married on August 16, 1922. There are no living children. After moving around during the first six years of their married life, they settled in Hibbing, Minnesota, in 1928 and lived in that general area until January 1945. Defendant is a barber by trade, which occupation he followed during the years of their marriage, except for a couple of years before the parties separated, during which time he worked for a contractor and a railroad company. About January 1945, defendant left Hibbing for Minneapolis so that he could be treated at the University Hospital for a stomach ailment, and he has lived there ever since. He has been working at the barber trade since he came to Minneapolis.

This action, commenced in June 1946, was tried the following February. The complaint charged defendant with cruel and inhuman treatment and habitual drunkenness, but the latter charge was abandoned on the oral argument before this court as not having been proved. The trial court found that defendant has not treated plaintiff in a cruel and inhuman manner and that he is not and has not been a habitual drunkard. Plaintiff was denied a divorce or separate maintenance, but was awarded judgment against defendant in the sum of $125, without costs or disbursements.

The only question for consideration here is whether the finding that defendant was not guilty of cruel and inhuman treatment of plaintiff is sustained by the evidence, as admittedly the habitual drunkenness charge was not proved.

This court has held in many cases that on appeal the evidence must be viewed in the light most favorable to the prevailing party and that the findings of the trial court will not be disturbed unless they are manifestly and palpably contrary to the evidence. Hanson v. Hall, 202 Minn. 381, 279 N. W. 227; Kaehler v. Kaehler,

219 Minn. 536, 18 N. W. (2d) 312, and cases cited. These rules are particularly applicable to the trial of a divorce case, where the ill feelings and bitterness between the contesting parties sometimes make it difficult to obtain dispassionate testimony upon which the trial court can base its adjudication. It has the opportunity to observe the parties and their witnesses, to question them, if necessary, and to try to ascertain the facts, and it has the means of estimating the true nature and degree of delinquency of the contestants. Webber v. Webber, 157 Minn. 422, 196 N. W. 646; Baker v. Baker, 224 Minn. 117, 28 N. W. (2d) 164.

A review of the testimony in a manner most favorable to defendant convinces us that there was sufficient evidence to sustain the findings of the trial court with reference to the allegations of cruel and inhuman treatment and habitual drunkenness. We shall briefly consider only the former allegation.

It is evident from the record that the couple got along fairly well during the first 23 years of their married life, except for the natural trials and tribulations which arise in homes where financial conditions are hard. Defendant is a barber and apparently had difficulty at times, especially during the depression, in making both ends meet. During some of these times it appears that he used part of his income for liquor, which is to be condemned when it meant that his wife had to go without some of the necessities of life.

The real breach between the parties seems to have come to a head in January 1945, when defendant went to Minneapolis to work and to receive medical treatment. Plaintiff refused to accompany him. Among the reasons she gave for not going with him was that when he first went down there he had only one room in which to live. It is apparent, however, that when they lived in Minneapolis shortly after they were married it was under trying conditions, and the memories of this were not too pleasant, as she said that she would not go to Minneapolis to live under any circumstances. "I wouldn't go there to starve. * * * I have had enough of Minneapolis." In the allegations of cruel and inhuman treatment in her complaint she claimed that she had to eke out her own existence; that her husband

was a spendthrift, careless in his financial affairs, and had no regard for her welfare; that he had contributed but $59 for her support between February 1946 and May 17, 1946; that he absented himself from his home evenings and that he sought the company of other women while away from home; and that the conduct of defendant made her nervous and ill, requiring medical treatment. She testified, however, that her husband had a rather gentle nature, had never beaten her, had never sworn at her, and had never ridiculed her in the presence of friends. There was testimony of attempted misconduct on the part of defendant with three of plaintiff's sisters. Plaintiff testified that this, together with not getting enough to eat at times and the drinking habits of her husband, brought about her nervousness.

Defendant testified that before he left for Minneapolis in 1945 he asked his wife to accompany him, but that she refused to do so. He said that he came back to Hibbing several times and asked her again to go to Minneapolis to live, but that she would not go. The record shows that from the time he went to Minneapolis in January 1945 until sometime in 1946, before the divorce proceedings were commenced, defendant lived in a single room and that he then rented a three-room apartment. He claimed that the reason he did not rent one sooner was because he could not get one. He said that after he rented the apartment he wrote his wife again and wanted her to come to Minneapolis to live, but that she did not do so.

The so-called "eternal" triangle also entered into the picture. Defendant claims that it was another man, a former mutual friend of the parties, who broke up his home. Plaintiff denied this. There was testimony from a husband and wife, acquaintances of the parties hereto, that plaintiff had introduced the other man to them at a dance in Hibbing on February 22, 1946, as "her boy friend." They testified that plaintiff told them at that time that she guessed she and her husband were going to separate and that she wanted a divorce. One of these witnesses said that plaintiff told her that the other man "wants to marry me, he wants to give me a good home, buy me new furniture and everything. He has got lots of money."

Plaintiff denied these conversations and said that she had never discussed marriage with this man, that she had never told her husband or anyone else that he planned on marrying her, and claimed that this man had been at their home only three or four times, some of which times he was there to do repair work. Plaintiff claimed that it was her husband's treatment of her and the stories she had heard of his attempted misconduct with her sisters that caused her to mistrust and lose her affection for him.

The trial court heard all this evidence, had an opportunity to observe the witnesses, and concluded that plaintiff was not entitled to a divorce or to separate maintenance. Under the rules of this court, we shall not disturb its decision; the judgment must stand.

Plaintiff is now approaching 50 years of age; the defendant 56. They have been married for more than 26 years. Here is a case where it would appear that each of the parties should do his or her duty toward the other—and this rule applies to the husband as well as to the wife—so that they can mend their differences and live compatibly during their remaining years.

■ M. S. A. 518.14 provides that "the court, in its discretion, may require the husband to pay any sum necessary to enable the wife to carry on or defend" a divorce action. This court has held that it may allow suitable attorneys' fees and necessary disbursements in connection with appeals in divorce cases. 2 Dunnell, Dig. & Supp. § 2804, and cases under note 59. We have awarded attorneys' fees and suit money to the wife in some cases even though she was the losing party. Gerard v. Gerard, 216 Minn. 543, 13 N. W. (2d) 606; and cases cited. Even though plaintiff was the losing party in the trial court and is here, we cannot say that her appeal is without merit so as to prevent her from recovering her reasonable expenses and attorneys' fees in connection with this appeal. We believe that plaintiff is entitled, in addition to the $125 allowed by the trial court, to the sum of $430.59 expenses on this appeal in connection with the court reporter, the clerk of court, the printing of the record and brief, costs, and $150 attorneys' fees for services rendered in this court on her behalf.

It is therefore ordered that the judgment of the trial court be affirmed; that plaintiff recover from defendant as attorneys' fees and disbursements in this court the sum of $580.59 in addition to the $125 allowed by the trial court.

Affirmed.

