## NORTHWEST TRACTOR & EQUIPMENT COMPANY, INC. v. FREND WADSWORTH AND ANOTHER.[1]

July 15, 1949.

No. 34,761.

*Hall, Smith, Enkel & Hedlund,* for appellants.

*Faegre & Benson* and *William M. Thomson,* for respondent.

[1]Reported in 38 N. W. (2d) 841.

LORING, CHIEF JUSTICE.

Plaintiff brought action in April 1948 to obtain possession and oust the occupancy of defendants of land alleged to be owned in fee by plaintiff described as follows:

"The Northwest Quarter of the Northwest Quarter (NW¼ of NW¼), and that part of the Northeast Quarter of the Northwest Quarter (NE¼ of NW¼) lying West of the right-of-way of the Great Northern Railway Company in Section Nineteen (19), Township One Hundred Nineteen (119), Range Twenty-one (21)."

In April 1942 this land was owned by Charles T. Wadsworth, the grandfather of defendants. April 7 of that year, he leased it to S. A. Wadsworth, defendants' father, who died in November of the following year. In September 3, 1943, Charles T. Wadsworth conveyed the land to his daughters, Grace Byrnes and Martha Donnelly, this plaintiff's grantors. Defendants continued to occupy and farm the land. They paid their aunts the annual rent of $50 a year plus the taxes, as provided in the lease, although the aunts assert that they knew only the rate of rent which defendants were paying and nothing of the written lease. This lease was not filed for record until 1948.

Mrs. Byrnes and Mrs. Donnelly sold the property to plaintiff in March 1948. Defendants refused to vacate the premises, and this suit followed. The trial court found for plaintiff and ordered immediate restitution of the premises with costs and disbursements. Judgment thereon was entered April 30, 1948, and this appeal is from that judgment.

The written lease under which defendants' father originally occupied the land provided that the property was rented for one-year periods, with automatic renewal on the first day of January of each year, commencing January 1, 1942, unless a six-months' notice to terminate the lease was given by the lessor.[2]

---

[2]"TO HAVE AND TO HOLD, The above rented premises unto the said second party, his heirs and assigns, subject to the conditions and limitations hereinafter mentioned for and during the full term of —— years from

■ The trial court having found in favor of plaintiff, the record must be viewed in the light most favorable to the findings and conclusion. Defendants' rights depend upon the proper interpretation of the following facts. In May 1947, it became known to defendants that their aunts, the sisters Byrnes and Donnelly, intended to sell the land, whereupon defendants offered to take a five-year lease and asked for a chance to buy, that is, to meet any offers they might get. The aunts refused to lease. They refused to sell at the price defendants ultimately offered. Conferences followed. A fair construction of the testimony supports a conclusion that the conferences between defendants and their aunts resulted in an arrangement which provided that defendants were to have the land for 1947, for which they then paid the rent, and that they were to give up possession when they got the crops off in the fall, but not later than December 31, 1947. Defendants do not specifically deny that such was the tenor of the conversation.

This arrangement between defendants and their aunts was made more than six months prior to January 1, 1948, the date on which, by its terms, the original lease, if still in force, would have automatically renewed itself. The arrangement would have been effective as notice of termination of that lease.

■ But any fair interpretation of the negotiations compels a conclusion that they completely superseded the previous lease by a lease for the season of 1947, which by its terms terminated on December 31 of that year. That defendants themselves so construed the arrangement made in the spring is indicated by the undenied fact that Frend Wadsworth, who apparently had charge of business

and after the 1st day of January 1942, the term of this Lease ending as hereafter stated.

\* \* \* \* \*

"Pursuant to an agreement precedent, it is understood by both parties that said within described premises are rented for one year periods with automatic renewal on the first day of January of each year commencing from the fist [*sic*] day of January 1942 and continuing so unless a 6 months notice to terminiate [*sic*] said lease is given by party of the first part."

arrangements, telephoned Mrs. Byrnes in September 1947 and asked her "How about fall plowing?" After this, the aunts wrote defendants, telling them that they expected to sell the land and that any expense defendants might incur would be at their own risk of getting the land for rent the next year. Defendants deny receipt of the letter, but their offer in December 1947 to purchase the land at $125 an acre, although the original lease had contained an option to purchase at a lower price, also tends to corroborate their aunts' testimony. This offer was not accepted, and defendants in January 1948 recorded the 1942 lease. In February, the owners, by letter,[3]

[3]*Exhibit E*                         "Sept 22-1947

"Dear Frend

"Instead of calling you, we are writing you in regards to that land you rented this year. We have decided to sell if we get our cash price. At present there are two parties that want it, which one can raise the cash will get it. So any work or expense that you would do or put into it would have to be at your own risk of getting it for rent next year, as we will not pay for it. Now we may not sell it but as we said above if we get our price & cash it will go. Ive thot it better to write than call—so hard to hear sometimes.

"As ever your aunts

               "Martha & Grace."

*Exhibit D*                     "Minneapolis, Minn
                        "February 5, 1948.

"Dear Frend and Webster:

"We are writing this letter to let you know that the 53 acres will not be for rent this year, (1948) as it is for sale.

"We were informed by the Gardner Realty Company that you boys felt you had a claim on it, and that it was actually necessary to give you six months notice before selling. We do not know or understand any reason why, as we notified you by letter (which we have a copy of) telling you that the land was for sale and that anything you did as to plowing and so forth was at your own risk and expense. The letter was mailed September 22, 1947, ample time for no extra work to be done unless you took the risk of getting the place.

"We have tried to be square and just with you but if all quotations are true you do not feel that way toward us.

"However, if there is anything you care to ask us in regard to the land please do so now and to us personally.

                    "Sincerely,

                       "Aunt Grace & Martha."

referred to their letter of September 22 and persisted in their position that the lease had been terminated. In March they closed the sale to plaintiff.

We think that the trial court was justified in finding that plaintiff was the owner of the premises in suit free from any claim of defendants. Other questions discussed become irrelevant.

Affirmed.