# JOSEPHINE ALBERTSON v. EMIL ALBERTSON.[1]

November 26, 1954.

No. 36,343.

*John S. McGrath* and *D. D. Daly,* for appellant.

*Hoffmann, Donahue & Graff,* for respondent.

[1]Reported in 67 N. W. (2d) 463.

DELL, CHIEF JUSTICE.

This is an action for divorce on the grounds of cruel and inhuman treatment, with a cross complaint by defendant for divorce on the same ground. Defendant appeals from an order denying his alternative motion for amended findings and conclusions of law or a new trial.[2]

Plaintiff, 58 years of age at the time of trial, immigrated to Middle River, Minnesota, from Norway in 1914. She completed the equivalent of two years of high school in Norway. For a time before going to Middle River, she lived with her aunt and uncle in Gaskey, Minnesota. Defendant, 68 years of age, came to this country from Norway as an infant and his family settled in Middle River around 1900. He had a high school education. The parties married in 1915, at which time plaintiff was working as a maid in a hotel owned by defendant's father and defendant was a clerk in a mercantile establishment. They moved to a 40-acre farm which defendant was purchasing under contract and there built a one-room cabin out of unfinished logs and tar paper. Plaintiff testified in detail to physical acts of violence committed by the defendant during the period when they were on this farm. He not only struck and beat her at various times, but threatened to kill her with a butcher knife. One night he kicked her in the stomach when she was pregnant, and she testified that she fell into a basement pit outside the house where she spent a part of the night. The child subsequently born had an indentation on the side of her head and died at the age of 17 months from convulsions. Of the four children born to the parties only one, Mrs. Eleanor Barstow of Seattle, Washington, is living. Her testimony, given by deposition, corroborated in several respects the acts of cruelty claimed by plaintiff.

Defendant, in the spring of 1922, went to St. Paul and was joined by the plaintiff later that year. In 1933 defendant became ill and was confined to a hospital for approximately three years. Plaintiff testified that during his convalescence defendant abused her, re-

[2]Appeal lies only from that portion of the order denying the motion for a new trial. City of Minneapolis v. Minneapolis St. Ry. Co. 115 Minn. 514, 133 N. W. 80.

peatedly hit her on the legs with his cane, choked her, swore at her, struck their son with his cane rendering him unconscious, was unsanitary in his toilet habits, and wrote indecent notes in her rooming house for the inspection of her roomers. Defendant voluntarily left the home in 1942 and lived a part of the time at a house owned by the parties in St. Paul and a part of the time with his daughter. When, in 1952, he attempted to return to the home occupied by the plaintiff she refused to let him enter. He moved into the hallway where he remained for several days until he was removed under a court order. This action for divorce was commenced simultaneously.

Defendant was partially crippled by his illness. He categorically denied the allegations of cruel and inhuman treatment made by plaintiff. In support of his cross complaint defendant claimed that plaintiff neglected him and associated "promiscuously" with other men, belittled his abilities, and generally treated him in a contemptuous manner.

Plaintiff, at the time of the trial, had four houses in St. Paul, one of which was recently sold under a contract for deed. The trial court found, and it seems reasonably clear, that the plaintiff and defendant were the owners in joint tenancy of the houses at 2277 Ellis street and 1030 Manvel street and that plaintiff was the sole owner of the houses at 153-155 Nina street and 924 Hague avenue. The evidence is conflicting as to what extent, if any, defendant contributed to the acquisition or improvement of these properties. In addition, plaintiff had $10,600 on deposit in her name in trust for her daughter and several other small amounts in trust for her grandchildren. She had $8,000 in bonds and a small checking account. Plaintiff's net worth was estimated by her at approximately $53,500 and by defendant in excess of $70,000.

In addition to granting plaintiff an absolute divorce, the court awarded her all of the property except the remainder due on the contract for deed on the Manvel street property which was $5,873.99, and this was awarded to the defendant. The amount owing on the Manvel street property was slightly in excess of the value of the

Ellis street property which was also held in joint tenancy. Defendant thereupon moved the court for amended findings of fact and conclusions of law and in connection therewith for the right to reopen the case and introduce newly discovered evidence of plaintiff's misconduct or, in the alternative, for a new trial. The motion was supported by several affidavits alleging that plaintiff had consorted with another man and that despite reasonable diligence this information could not be obtained for presentation at the time of the trial.

■ Defendant contends that the evidence does not justify the finding that defendant treated the plaintiff in a cruel and inhuman manner, and that under the evidence he was entitled to a divorce from plaintiff on this same ground. Defendant, among other things, contends that plaintiff was impeached; that her claims of cruelty are inherently improbable; that her testimony is not corroborated as required; and that, because plaintiff lived with defendant subsequent to some of the alleged acts of cruelty, she condoned the treatment.

The well-settled rule that the findings of the trial court will not be disturbed on appeal unless manifestly against the evidence has particular application in divorce cases.[3] Obviously the trial court is in a far better position than we are to evaluate the various factors bearing on the credibility of the witnesses, such as their demeanor, disposition, and character. We find nothing in the record discrediting plaintiff to such an extent as to render her testimony unworthy of belief as a matter of law, nor can we agree that her claims of cruelty are inherently improbable. Conflicts in evidence must be resolved by the trial court.[4] Moreover, the statutory requirement of

[3]Wilson v. Wilson, 229 Minn. 126, 38 N. W. (2d) 154; Ellingson v. Ellingson, 227 Minn. 149, 34 N. W. (2d) 356. Divorce cases where the rule has been applied are collected in 1 Dunnell, Dig. (3 ed.) § 411, note 8.

[4]Georgopolis v. George, 237 Minn. 176, 54 N. W. (2d) 137; Loth v. Loth, 227 Minn. 387, 35 N. W. (2d) 542, 6 A. L. R. (2d) 176.

corroboration,[5] the primary purpose of which is to prevent collusion,[6] was sufficiently met. The testimony of the daughter as to the physical acts of violence she observed and that of neighbors who saw black-and-blue marks on the plaintiff[7] are sufficient in themselves to lead a reasonable mind to believe plaintiff's testimony as a whole to be true. The statute does not require absolute corroboration,[8] and where there is no question of collusion, as in this case, it may be liberally applied.[9]

The defense of condonation is without merit under the circumstances here. And even where there is condonation in the first instance, cruelty will be revived by subsequent misconduct of such a nature as to create reasonable apprehension of reoccurrence.[10] This is true even if the subsequent acts are not in themselves sufficient to constitute grounds for divorce. It is unnecessary to set out in detail the evidence adduced at the trial bearing on this alleged error. An examination of the record reveals not only a course of conduct on the part of defendant that can readily be said to constitute cruel and inhuman treatment,[11] but also repeated acts of physical violence of the most contemptuous nature. As to defendant's claim that plaintiff was guilty of cruel and inhuman treatment,

---

[5]M. S. A. 518.28 provides: "Divorces shall not be granted on the sole confessions, admissions, or testimony of the parties, either in or out of court." See, Annotation, 15 A. L. R. (2d) 170.

[6]Graml v. Graml, 184 Minn. 324, 238 N. W. 683.

[7]See, Locksted v. Locksted, 208 Minn. 551, 295 N. W. 402, where the statute was held satisfied by testimony of witnesses who saw black-and-blue marks on plaintiff.

[8]Visneski v. Visneski, 219 Minn. 217, 17 N. W. (2d) 313; Gerber v. Gerber, 241 Minn. 346, 348, 64 N. W. (2d) 779, 781.

[9]Wilson v. Wilson, 229 Minn. 126, 38 N. W. (2d) 154; Arp v. Arp, 229 Minn. 6, 38 N. W. (2d) 67; Potter v. Potter, 224 Minn. 29, 27 N. W. (2d) 784; Louden v. Louden, 221 Minn. 338, 22 N. W. (2d) 164; see, 35 Minn. L. Rev. 168, 177 to 178.

[10]Cochran v. Cochran, 93 Minn. 284, 101 N. W. 179.

[11]Such conduct is defined in Williams v. Williams, 101 Minn. 400, 404, 112 N. W. 528, 530. For examples, see Wilson v. Wilson, 229 Minn. 126, 129, note 2, 38 N. W. (2d) 154, 156, note 1.

it is only necessary to say that the evidence did not require such a finding.

■ Counsel for defendant claims that by virtue of information which came to him through another lawyer subsequent to the trial he was able to obtain evidence which would enable him to prove that plaintiff was guilty of misconduct in associating with another man. It is contended that the trial court erred in not granting a new trial to permit this newly discovered evidence to be heard. The argument is not persuasive. The evidence could, under some circumstances, constitute cruel and inhuman treatment warranting divorce[12] and, as defendant points out, the court under Rule 59.01 of Rules of Civil Procedure was authorized to take additional testimony and make amended findings of fact and conclusions of law. However, the only question before this court is whether the trial court abused its discretion in refusing to grant a new trial.[13] Unless there is a clear showing that the result would be materially affected by the new evidence, the decision of the trial court must be sustained. Evidence which is merely contradictory, impeaching, or cumulative cannot be made the basis of a new trial except under the most extraordinary circumstances.[14] The unfaithfulness of plaintiff was repeatedly suggested by defendant's testimony and consequently there is some doubt as to whether the new evidence which defendant sought to place before the court was merely cumulative, impeaching, and contradictory. The new evidence related only to plaintiff's conduct subsequent to the time that defendant left home which tends to reduce its significance.[15] In addition there is some question whether the evidence could have been discovered before the trial by

[12]Tschida v. Tschida, 170 Minn. 235, 212 N. W. 193, commented on in 2 Notre Dame Law. 217 and 13 Va. L. Rev. 654. See, Kingsley, *Cruelty as a Ground for Divorce in Minnesota*, 16 Minn. L. Rev. 256, 261 to 262, where the author concludes that such conduct, in order to warrant divorce, must closely approximate adultery.

[13]Cases collected in 14 Dunnell, Dig. (3 ed.) § 7125, note 10.

[14]Skog v. Pomush, 219 Minn. 322, 17 N. W. (2d) 641; Merek v. S. J. Groves & Sons Co. 200 Minn. 418, 274 N. W. 402.

[15]See, Eller v. Eller, 182 Minn. 133, 233 N. W. 823.

the exercise of reasonable diligence.[16] Where such doubts exist we cannot justifiably hold that the trial court abused its discretion in ruling as it did.

█ Finally, defendant contends that the court abused its discretion in its division of the property involved. The division of property in divorce proceedings is regulated solely by statute.[17] Under the provisions of M. S. A. 518.58, enacted in 1951,[18] the court may now make such disposition of property acquired during coverture "as shall appear just and equitable." This determination involves the exercise of wide discretion by the trial court. The record reflects painstaking effort on the part of the trial judge to analyze the confusing evidence of property ownership and contributions. Despite defendant's assertion to the contrary, there is every indication that the guides prescribed by the statute were given due consideration. The evidence fairly shows that the great bulk of plaintiff's present net worth was the result of her own labors and sound business judgment while defendant's contributions were negligible. At best the evidence of the extent of defendant's contributions is conflicting and to be resolved by the trial court. We can find no abuse of discretion in its determination.

Viewing the evidence in the light most favorable to the prevailing party, as we are obliged to do,[19] we have no difficulty in concluding that the findings and conclusions of the trial court are amply supported by the evidence and that there clearly was no abuse of discretion in denying defendant's motion for a new trial.

Affirmed.

[16]See, Carl v. DeToffol, 223 Minn. 24, 25 N. W. (2d) 479.

[17]Nelson v. Nelson, 149 Minn. 285, 183 N. W. 354.

[18]L. 1951, c. 551, § 5.

[19]Northwest Tractor & Equipment Co. Inc. v. Wadsworth, 229 Minn. 213, 38 N. W. (2d) 841; Ellingson v. Ellingson, 227 Minn. 149, 34 N. W. (2d) 356.