**200 LEVEE DRIVE ASSOCIATION, LTD., Petitioner, Respondent,**

v.

**COUNTY OF SCOTT, Relator.**

No. C3–94–1542.

Supreme Court of Minnesota.

June 9, 1995.

Angela M. Helseth, Asst. Scott County Atty., Shakopee, for relator.

Thomas B. Humphrey, Jr., Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for respondent.

## OPINION

STRINGER, Justice.

This matter concerns the appropriate determination of value for a rent subsidized apartment complex located at 200 Levee Drive in Shakopee, Minnesota. The property currently houses low-income, elderly tenants whose rent is subsidized pursuant to the Fair Housing Act, 42 U.S.C. § 1437f. The property was built in 1980–1981 of concrete block with brick veneer, and comprises 66 one-bedroom units. The property has no basement, but has a lounge area, an office, a community room, and an exterior paved parking lot of approximately 6,900 square feet with 21 parking spaces.

The Scott County Deputy Assessor initially valued the property at $1,427,700 for taxes due and payable in 1993. This valuation was derived from the 1988 tax assessment because the property's value had not changed since the 1988 assessment. Respondent contested the valuation. On reassessment the assessor calculated a value of $1,455,600 using the income capitalization approach.

At trial before the Minnesota Tax Court, the assessor relied on the income capitalization approach to determine a fair market value of $1,455,600. Rental survey information from the City of Shakopee indicated that in 1991, rental costs for one bedroom apartments ranged from $376 to $495 per month. Using this information and comparing the subject property with market apartments in the area, the assessor assumed a rent of $440 per month, and a median vacancy rate of 10 percent. The assessor used a 40.5 percent expense ratio, exclusive of real estate taxes, and employed a capitalization rate of 9.6 percent derived from sales of five similar size apartment buildings between March 1991 and March 1992 in the Twin Cities Metropolitan area. He used an effective tax rate of 3.22 percent, the actual tax rate for subsidized apartment housing.

Respondent did not produce a separate appraisal for the subject property, nor did respondent contest the assessor's use of the income capitalization approach. Rather, respondent asserted that because the property is subsidized, the amount necessary to convert the property to non-subsidized market property should be deducted from the property valuation. Respondent acknowledged that the subsidized apartment complex might never be converted to market property, but deemed the deduction necessary because market buyers would consider conversion costs when deciding whether to purchase the property for market apartments.

Jack Prill, a licensed commercial real estate appraiser who testified on behalf of respondent, detailed the changes he deemed necessary to make the apartments comparable with market apartments in the area that actually rent for $440 per month. The subsidized apartments do not have dishwashers,

garbage disposals, cable television hook-ups, or air conditioners. There are only three washing machines and three dryers for the 66 unit complex. In addition, the property currently has 21 parking spaces for 66 units. According to Prill, a market apartment complex would require at least one parking space per resident unit. Prill estimated it would cost approximately $100,000 to purchase and convert the property adjacent to the apartment complex for parking facilities. Based on Prill's testimony, respondent argued that conversion costs of $836,215 should be subtracted from the income valuation, yielding a final valuation of $604,000.

The Minnesota Tax Court, Chief Judge Gustafson presiding, adopted neither party's approach in its entirety, but instead prepared its own income analysis. The court decreased the assumed rental rate from $440 per month to $420 per month, raised the capitalization rate from 9.6 percent to 10 percent, and employed the market tax rate of 4.72 percent rather than the subsidized tax rate of 3.22 percent.

Noting that respondent employed an "unorthodox" approach to valuation, the court declined to deduct proposed conversion costs from the assessed value after using the income approach. Instead, the court included an allowance for replacement reserves in its 40 percent expense estimate to cover the cost of converting the property. However, the court permitted a conversion cost deduction of $100,000 with respect to parking facilities. The tax court valued the property at $1,120,285.

Relator moved for reconsideration pursuant to Minn.Stat. § 271.10, subd. 2, or in the alternative for a new trial pursuant to Minn. R.Civ.P. 59 on the issue of the cost of acquiring adjacent property for additional parking facilities. The tax court denied relator's motion and this appeal followed.

■ The first issue before this court is whether the evidence supports the tax court's adoption of a lower rental rate, higher capitalization rate, and higher tax rate than employed by the Scott County Assessor. In a proceeding brought by a taxpayer to challenge a property valuation, there is a *prima facie* presumption that the assessor's valuation is proper. *In re McCannel*, 301 N.W.2d 910, 923 (Minn.1980). The trial court's findings of fact in a property valuation for tax purposes will be sustained on review unless they are clearly erroneous. *Great Plains Supply Co. v. County of Goodhue*, 268 Minn. 407, 129 N.W.2d 335 (1964); *see also Nagaraja v. Commissioner of Revenue*, 352 N.W.2d 373, 376 (Minn.1984).

While subsidized apartment buildings are taxed at a lower rate than nonsubsidized rental properties, the legislature has determined that a determination of market value must "be based on the normal approach to value using normal, unrestricted rents." Minn.Stat. § 273.13, subd. 25(c)(3).

Relator argues the tax court erred by applying (1) a rental rate of $420 per month rather than the assessor's estimated rental figure of $440 per month; (2) a capitalization rate of 10 percent rather than the 9.6 percent rate employed by the assessor; and (3) a market tax rate of 4.72 percent rather than the subsidized tax rate of 3.22 percent.

■ The $420 per month rent adopted by the court is within the range of rents testified to by the assessor. At trial, Prill's testimony indicated that the subsidized apartments would not command $440 per month without substantial modifications. As to the capitalization rate, the rate employed by the assessor was the median from a range of capitalization rates for apartments in the Twin Cities metropolitan area, ranging from 9.15 percent to 11.25 percent. The rate of 10 percent employed by the tax court was within 0.4 percent of the median employed by the assessor, and is within the range of capitalization rates for the metropolitan area.

■ With respect to the question whether the tax court erred in applying the market tax rate rather than the subsidized tax rate, we conclude that the tax court properly followed the legislative mandate of Minn.Stat. § 273.13, subd. 25(c)(3), requiring market value to be determined with reference only to "the normal approach to value using normal, unrestricted rents." Applying the market tax rate is consistent with the plain language

of Minn.Stat. § 273.13. Moreover, as the tax court noted:

> As this case illustrates, real estate appraisal is at best an imprecise art, and a tax court proceeding is not high-low arbitration where the decision-maker must choose the figure submitted by one or the other party. The Tax Court brings its own expertise and judgment to the hearing, and its valuation need not be the same as that of any particular expert as long as it is within permissible limits and has meaningful and adequate evidentiary support.

*Montgomery Ward v. County of Hennepin,* 482 N.W.2d 785, 791 (Minn.1992) (citation omitted).

 Relator also challenges the tax court's decision to deduct $100,000 from the property valuation for additional parking facilities.[1] In the income capitalization approach to valuation, a replacement allowance generally provides for periodic replacement of building components that will require replacement during the building's economic life. *See The Appraisal of Real Estate,* 449 (10th ed. 1992). These components "may include roof covering, carpeting, kitchen, bath and laundry equipment, compressors, elevators and boilers, * * * sidewalks, driveways, parking areas [and] exterior painting." *Id.* Here, a provision for additional parking facilities was necessary in order to evaluate the apartment according to market rates. Because of zoning and market requirements, the subject property could not be evaluated as market property without providing for additional parking facilities. Essentially, the property is subject to an extraordinary impediment because comparable market properties, that include adequate parking facilities, are not similarly distressed.

Relator contends the assessor considered the size of the parking facilities when it valued the property. Thus, relator argues the parking deduction, in addition to the preferential treatment accorded subsidized property, essentially gives respondent a "double decrease." Neither the trial testimony nor the relator's valuation summary conclusively demonstrate that the assessor adjusted the subject property's value based on the inadequate parking facilities. The valuation summary merely reports the square footage of the parking lot. We conclude that the tax court did not err in employing the market tax rate, lower rental and capitalization rates, or by allowing a conversion cost deduction for additional parking facilities.

 Finally, relator seeks a new trial on the issue of the cost of acquiring adjacent property for parking facilities. Relator asserts it "had no reason to suspect" that the value of land adjacent to the subject property would be an issue at trial. At trial, respondent estimated it would cost approximately $100,000 to convert adjacent property into a parking lot. In its motion for a new trial, relator offers the affidavit of County Assessor Robert Schmitt who asserts that "other properties are available for either sale or rent at a cost substantially lower than $100,000." The tax court denied relator's motion for a new trial, finding that the evidence was discoverable before trial.

Minn.R.Civ.P. 59.01 provides the grounds for a new trial. In pertinent part it states:

> A new trial may be granted to all or any of the parties and on all or part of the issues for * * * (d) Material evidence newly discovered, which with reasonable diligence could not have been found and produced at the trial; * * * * [or] (g) The verdict, decision, or report is not justified by the evidence, or is contrary to law;

---

1. Admittedly, deductions or additions to the value derived by the income approach after applying the capitalization rate are unusual. *See, e.g., ROP Inv. Co. v. County of Hennepin,* TC–11931, TC–14642, 1992 WL 204720 (Minn.Tax Ct. July 7, 1992). While the tax court often concludes that it is more appropriate to maintain a reserve for such expenses, a conversion cost deduction from a final valuation is not unprecedented. *Compare Bergstad Properties v. County of Goo-*

*dhue,* Nos. C6–92–340, C8–92–341, 1993 WL 264665 (Minn.Tax Ct. July 12, 1993) *with Lampy Ready Mix, Inc. v. County of Otter Tail,* No. C7–90–691, 1991 WL 44882 (Minn.Tax Ct. Mar. 25, 1991) (using the income approach to value a strip shopping center that suffered from poor repair, both appraisers employed, and the tax court adopted an approximately $200,000 conversion cost deduction to restore the center to marketable condition).

Minn.R.Civ.P. 59.01(d), (g); *see also Vikse v. Flaby,* 316 N.W.2d 276, 285 (Minn.1982). The granting of a new trial rests almost entirely in the discretion of the trial court and will be reversed only for a clear abuse of discretion. *State v. Thompson,* 273 Minn. 1, 33, 139 N.W.2d 490, 513, *cert. denied,* 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966).

Relator made no objection at trial to the evidence on the issue of acquiring adjacent property. Moreover, newly discovered evidence "which is merely contradictory, impeaching, or cumulative cannot be made the basis" for a new trial except in "extraordinary" cases. *LeMieux v. Bishop,* 296 Minn. 372, 209 N.W.2d 379, 386 (1973) (citing *Albertson v. Albertson,* 243 Minn. 212, 217, 67 N.W.2d 463, 467 (1954)). Where a question exists whether the evidence could have been discovered before trial through exercise of reasonable diligence, the trial court cannot be said to have abused its discretion in denying a motion for a new trial. *Albertson,* 243 Minn. at 217, 67 N.W.2d at 467. This situation does not present the "extraordinary circumstances" that justify a new trial pursuant to Minn.R.Civ.P. 59.01.

The decision of the tax court is affirmed.